## S95A1360. MATTOCKS v. MATUS.
(466 SE2d 840)

HINES, Justice.

Matus filed a contempt action against her former husband, Mattocks, for his failure to pay certain college expenses for one of their sons. She alleged Mattocks was obligated to do so by the agreement incorporated into the parties' 1980 final judgment and decree of divorce.[1] The agreement provided that the specified educational expenses be "paid by the Husband for such purpose *only so long as* each child is enrolled in college as a *full-time* student, seeking a four year college degree." (Emphasis supplied.) The superior court found that the son, who was then 23, at all times had been enrolled as a full-time student in a four-year degree program. It ordered Mattocks to reimburse Matus for past expenses and to pay for future ones so long as the son was enrolled in a four-year degree program on a full-time basis "as defined by the University of Georgia." We granted Mattocks' application for discretionary appeal, and we reverse.

Mattocks' obligation to provide for the educational expenses for his adult son arose solely from the agreement between the parties. See *Marshall v. Marshall*, 262 Ga. 443 (421 SE2d 71) (1992); *Coleman v. Coleman*, 240 Ga. 417, 422 (5) (240 SE2d 870) (1977). The plain language stated that the obligation was "only so long as" two conditions existed. The son had to be enrolled full time and in pursuit of a four-year college degree. The trial court found both conditions satisfied; however, it did so after assessing the son's attendance by evidence of course load and credit hours. This was error. There was no evidence that the parties intended this standard as the agreement. Moreover, this Court has otherwise construed "the phrase 'full time student' to mean continuous attendance during the normal school year." *Hayward v. Lawrence*, 252 Ga. 337, 338 (312 SE2d 609) (1984).

The evidence was undisputed that the son was not in continuous attendance for the duration of the normal school year after the conclusion of the 1989-1990 academic year. During that first year, the son was enrolled in a private college and on partial scholarship. He chose to leave school after he learned that his scholarship grants would not be renewed for academic reasons. He worked, joined the military, and did not resume his college education until approximately 15 months later when he entered the state university system.[2]

Thus, Mattocks' support obligation for the son's educational ex-

---

[1] Matus sought reimbursement for educational expenses for the 1991-1992, 1992-1993, and 1993-1994, academic years and an order requiring Mattocks to pay for such expenses during the next two years in which the son was enrolled in the state university system.

[2] The son's attendance at the state university was interrupted in the spring of 1993 and again in the winter of 1994.

penses ended at the conclusion of the 1989-1990 academic year when the son ceased to be a full-time student within the meaning of the agreement. The agreement did not call for a resumption of payment by the father following interruption of his son's college attendance, and the trial court in this proceeding was without authority to modify the agreement to provide otherwise. See *Still v. Still*, 199 Ga. App. 723 (405 SE2d 762) (1991).

*Judgment reversed. All the Justices concur, except Sears and Hunstein, JJ., who dissent.*

SEARS, Justice, dissenting.

The record in this case establishes that appellant Mattocks, a former senior vice president with C & S Bank, voluntarily entered into an agreement which was later incorporated into the divorce decree between him and his ex-wife. The divorce decree obligated Mattocks to pay only minimal child support, approximately $200 per month, for his two sons until they reached the age of majority. In light of these minimal support obligations, the agreement incorporated into the decree stated that:

> [Mattocks] agrees and shall pay *as a part of the support for each child,* in addition to the monthly payments hereinabove provided, *the cost of educating the two minor children for four (4) years of undergraduate work* commensurate with the cost of educating the children at a college or university that is a member of the Board of Regents of the State of Georgia. . . . The above sum or sums shall be paid by [Mattocks] for such purpose only *so long as each child is enrolled as a full time student, seeking a four year degree.*

Pursuant to the decree, Mattocks paid all of the costs associated with his eldest son's four-year college education. When his youngest son, David, enrolled in Mercer University in Fall 1989, he did so on a partial scholarship and grant, thereby relieving Mattocks of the burden of paying for all but a minimal amount of that year's educational expenses.[3] The young man's academic performance at Mercer during his first year was satisfactory enough to allow him to remain in school, but not sufficient enough for him to retain his scholarship. In Spring

---

[3] It is uncontroverted that this is the only year in which Mattocks contributed to David's education. Testimony indicates that Mattocks paid somewhere between $2,000 and $3,000 for David to attend Mercer in 1989-1990, even though tuition alone for that year was approximately $13,000. Mattocks admits that he obtained $1,600 of the amount he paid from a money market account established by David's grandfather for the young man's education. Thus, Mattocks' total contribution to his son's college education is somewhere between $400 and $1,400.

1990, the young man withdrew from Mercer, upon learning that he could not afford to continue his education at that institution, in part because Mattocks would not assist in paying the costs at Mercer.[4] David then went to work in order to save money to go back to college.[5]

When David sought to resume his college education some months later, Mattocks refused to pay any part of the costs. In Mattocks' own words, "You had your opportunity, you dropped out . . . and I don't believe that it is my obligation to continue to support you the rest of your life *in your bent to seek a college education.*" In Fall 1991, without his father's financial support, David enrolled in the University of Georgia, and attended classes there until the end of the Spring 1992 quarter. He returned to school that fall, as is normal, and attended classes the following winter quarter, in addition to the Summer and Fall 1993 quarters, and the Spring 1994 quarter. David was enrolled in classes full time during some, but apparently not all, of these school year quarters. However, the record shows that ever since he left Mercer University, David has always worked full time in order to support himself and in order to meet his educational expenses. This likely explains why his enrollment was not always full time.[6]

Mattocks' testimony reveals the likely reason why he refused to pay for his son's education. While the boy was still in high school, he apparently developed a dependency upon alcohol, and was admitted into a resident treatment center. Mattocks testified that he paid part of the cost of the treatment center, and, by the time the young man attended Mercer, Mattocks thought that he had "paid enough." Mattocks also testified that when his son suffered a relapse shortly after leaving the treatment facility, Mattocks felt that the money he had spent on treatment had been wasted — "I wasn't happy. . . . I was really upset . . . in all of this money we had spent on him for this treatment and he relapsed."

Accordingly, it is uncontroverted that since his son reached college age, Mattocks has paid a total of somewhere between $400 and $1,400 toward the first two quarters of his son's college education, despite his clear and unambiguous agreement under the decree to pay *"the cost of educating [his son] for four (4) years of undergraduate work."*[7] Since the end of his son's second quarter in college, Mattocks

---

[4] The majority states that David "chose to leave school after he learned that his scholarship grants would not be renewed for academic reasons." Op. at 346.

[5] As noted by the majority, David entered the Army Reserves during this time. However, the record indicates that David did so in order to obtain assistance with college costs.

[6] Because the record reveals that David was not always enrolled full time, I agree with the majority that the trial court erred in finding that such enrollment was full time. I would, therefore, remand this case for further findings of fact.

[7] See p. 347, supra.

has flatly refused to pay for any part of his son's education, in blatant contempt of his agreement and obligation under the decree. Mattocks apparently is of the opinion that his obligation to pay for his son's four-year education was discharged when he helped pay the medical costs associated with his son's recovery from alcoholism.

Today, the majority rules that Mattocks' obligation to pay the cost of David's four-year college education ended when David withdrew from Mercer University. I believe that in reaching this ruling, the majority has construed the terms of Mattocks' divorce decree in a manner contrary to the rules of contract construction, and relied upon case law that is distinguishable from this case. I am also concerned that the reasoning of the majority opinion could lead to unintended consequences. Therefore, I respectfully dissent.

1. In construing any contract, words carry their usual and common meaning, and "the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."[8] Moreover, if the construction of a contractual term is doubtful, that construction which goes most strongly against the party undertaking the obligation is always preferred.[9] Furthermore, it is established that if there is a conflict between different provisions of the same contract, the provision that appears in the contract *first* will prevail.[10]

Applying these tenets of contract construction to this case, it is clear that Mattocks' obligation could only be discharged after he paid for four years of David's undergraduate college education at a cost commensurate with a state supported college or university. The decree obligates Mattocks to pay "the cost of educating [David] for four years of undergraduate work . . . so long as [he] is enrolled as a full time student, seeking a four year degree." The plain meaning of this clause can only be that when David is enrolled as a full-time student in pursuit of an undergraduate degree, Mattocks is required to pay the associated costs, for a total of four years (or eight semesters, or sixteen quarters). If David is not enrolled during a particular term, or is enrolled as anything less than a full-time student, Mattocks is not obligated to pay. Nor is Mattocks obligated to pay costs if David is enrolled seeking anything other than a four-year undergraduate degree.[11]

---

[8] OCGA § 13-2-2 (3), (4); see *Business Dev. Corp. v. Hartford Fire Ins. Co.*, 747 F2d 628 (11th Cir. 1984).

[9] Id.; *Franklin v. Franklin*, 262 Ga. 218 (416 SE2d 503) (1992).

[10] *West v. Randle*, 79 Ga. 28, 32 (3 SE 454) (1887); *Wilner's, Inc. v. Fine*, 153 Ga. App. 591, 594 (266 SE2d 278) (1980).

[11] I would construe this to mean that Mattocks is required to pay for only four years of college, in the aggregate, regardless of whether it takes David longer than a total of four years to obtain a four-year degree.

In its construction of this language, the majority appears to have grafted additional language into the contract, which relieves Mattocks of his obligation merely because David's enrollment as a full-time student was not continuous. The majority rules that " 'full time student' " means *continuous enrollment* during the normal school year." The majority rejects the common standard for measuring " 'full time student' " status — the number of credit hours carried in a particular quarter — by stating that there is "no evidence that the parties intended this standard as the agreement." However, I can discern nothing in the decree that indicates that the parties intended for " 'full time student' " to require " 'continuous and uninterrupted enrollment.' " Rather, the decree simply requires that David be enrolled full time in pursuit of a four-year undergraduate degree. Therefore, I would apply the normal standard of the number of credit hours carried in order to determine whether David was a full-time student.

Furthermore, to the extent that there is any incongruity between the requirement that Mattocks pay the cost "for four years of undergraduate work" and the statement that such payment is due "so long as each child is enrolled as a full time student," such incongruity must be construed most strongly against Mattocks. Our case law further instructs that, if these two contractual phrases cannot be construed consistently, the phrase appearing in the contract *first* — unconditionally requiring Mattocks to pay for four years of college education — must prevail.[12] Accordingly, I do not believe that Mattocks' obligation to pay for four years of undergraduate work ended when David's education was interrupted.

The majority opinion also relies upon two cases, both of which are distinguishable. The first of these cases, *Still v. Still*,[13] concerned a decree that required the ex-husband to pay college costs "as long as the child remains *continuously enrolled* in [college]."[14] There is no such language in Mattocks' decree. Hence, *Still* is plainly distinguishable. Nor does the majority's citation to *Hayward v. Lawrence*[15] provide support, as the decree in that case required the ex-husband to pay support only until his child reached the age of 18, "or *is no longer a full time* student in an accredited college."[16] Obviously, by using this language, the decree in *Hayward* set a point of termination, after which the obligation to pay college costs ended. Once the child in *Hayward* ceased to be a full-time student, the obligation also ceased. Conversely, the language of Mattocks' decree requires him to pay col-

---

[12] See n. 8 and accompanying text.
[13] 199 Ga. App. 723 (405 SE2d 762) (1991).
[14] 199 Ga. App. at 724.
[15] 252 Ga. 337 (312 SE2d 609) (1984).
[16] 252 Ga. at 337.

lege costs *"so long as"* David is enrolled as a full-time student seeking a four-year degree. The language in Mattocks' decree does not set a point of termination, it simply states that Mattocks' obligation will be discharged after he pays for four years of undergraduate work, so long as David is enrolled full time. Nor does the language in Mattocks' decree state that an interruption in "full time student" status will relieve Mattocks of his obligation to pay college costs. Accordingly, *Hayward* was based upon contractual language that carries an altogether different meaning than the language in this case. What is more, the issue in *Hayward* was whether the support obligation in that case was satisfactorily specific, and thus capable of enforcement.[17] Because *Hayward*'s construction of the phrase "full time student" has no relevance to that ruling, the majority has based its reliance on *Hayward* upon mere dicta in that case.[18]

2. It is also worthy of consideration that Mattocks is at least in part to blame for the interruption in David's education, and thus may have come into court with unclean hands. As explained above, David was forced to leave Mercer University at the conclusion of the 1989-1990 school year, when his scholarship was not renewed, even though he was academically qualified to remain at the University. David had no choice but to leave Mercer at this time because, when Mattocks refused to contribute to David's education at Mercer, it became apparent that he could not afford to stay there. There is no evidence of record that Mattocks offered to pay for David to continue his education at a less expensive state-supported institution, which would have been entirely reasonable under the decree. Rather, Mattocks' statements at the hearing indicate that, in his opinion, David "had his opportunity," and when he lost his scholarship, he also lost Mattocks' support.

Thus, David's undergraduate education was interrupted, at least in part, because Mattocks refused to fulfill his obligation to pay for that education, forcing David to work full time in order to pursue his education. Since the time that David left Mercer, Mattocks has persistently refused to help pay for David's education, forcing him to continuously interrupt his pursuit of his education. That same interruption, perpetuated by Mattocks, is now the reason why he is relieved of his obligation to pay college costs. This reasoning and its result are eminently unjust, especially in light of the fact that the decree does not require that David's education be continuous.

This unjust result is exacerbated by the distinct possibility that the majority's ruling could lead to unintended consequences. Under

---

[17] Id. at 337-338.
[18] See id. at 338.

the majority opinion, *any* interruption in David's pursuit of a four-year degree relieves Mattocks of the obligation to pay college costs. David was an active ROTC student, and his scholarship to Mercer was related to his ROTC involvement. Under the majority's analysis, if David's college education was interrupted because he served in military service during a time of national emergency, such as the Gulf War, Mattocks would not have to pay for David to resume his education upon the completion of his service. Alternatively, if David was seriously injured or became seriously ill, and was ordered by a doctor to withdraw from school for a limited time as part of his recovery, Mattocks' obligation would cease, because the full-time pursuit of education was not "continuous." Such absurd results could not have been the parties' intent under the agreement incorporated into the decree in this case. Nor could they be intended by the countless other divorced parties who have entered into similar agreements or decrees. Nonetheless, these results could follow from the requirement that " 'full time student' " status requires continuous, uninterrupted enrollment.

3. Finally, as the recipient of support under the agreement between his divorcing parents, without any indication that this Court would someday construe that agreement as it has done today, David could not have known that his father's obligation would cease if his education was not continuous. Had the "continuous" requirement been expressly spelled out in the agreement, or if there was sufficient case law on the question to put him on constructive notice of the "continuous" requirement, David could have governed himself accordingly. As it was, David had no such notice, or opportunity to govern his actions. Moreover, as noted above, as a youngster, David received only minimal financial support from his father in consideration of the fact that his father was obligated to pay college costs. Now, even though he has enjoyed the benefit of those minimal support obligations, Mattocks has reneged on his part of the bargain by refusing to pay college costs, and has thereby shortchanged his son for the second time.[19]

4. Because I believe that the majority opinion construes the terms of Mattocks' divorce decree in a manner contrary to the rules of contract construction, and relied upon case law that is distinguishable from this case, and due to my concern that the majority opinion may lead to unintended consequences, I respectfully dissent.

I am authorized to state that Justice Hunstein joins in this dissent.

---

[19] In this regard, I cannot help but note that the money Mattocks has spent paying the fees of his two attorneys in this case could have been more productively spent funding David's four-year education.

Decided February 12, 1996 —
Reconsideration denied March 11, 1996.

*Stepp, Bowers & Smith, Jerry L. Stepp, Bernard Knight,* for appellant.
*Larry L. Duttweiler,* for appellee.