## A00A1539. WEISS v. VARNADORE.
### (541 SE2d 448)

BLACKBURN, Presiding Judge.

Upon this Court's grant of discretionary review, Rhonda Weiss, a/k/a Rhonda Minder, appeals the trial court's latest order awarding joint custody of her minor children, N. M. S. and D. K. S., to her and to Mary Ann Varnadore,[1] the children's maternal grandmother, and awarding certain visitation rights to Varnadore. For the reasons set forth below, we vacate the judgment and remand the case for further consideration.

This custody dispute began November 5, 1996, when Varnadore sought custody of her grandchildren, ages nine years and five years, alleging that the children were mentally and physically abused by Weiss and her boyfriend, William Minder. The petition further showed that the natural father of the children, David Kelsey Sparre, from whom Weiss was divorced, was incarcerated at that time. As of November 5, 1996, Weiss was in the process of a divorce from Dean Weiss and had twice previously married and divorced Minder, with whom she was again having a relationship. The petition alleged bruising and physical abuse of the grandchildren and drug use by Weiss and Minder.

An ex parte emergency order was issued November 5, 1996, which granted Varnadore temporary emergency custody of the children. Varnadore appeared with counsel, while Weiss was present without counsel. Thereafter, Weiss obtained counsel and filed responsive pleadings. Varnadore filed numerous affidavits of individuals which alleged inappropriate conduct by Weiss. After a lengthy hearing, the trial court entered a temporary order on December 6, 1996, which awarded joint legal custody to both Varnadore and Weiss, with

---

[1] Appellee Varnadore did not file a responsive brief with this Court.

Weiss having physical custody. Additionally, the temporary order granted specific visitation rights to Varnadore.[2]

Mr. and Mrs. Weiss reconciled, and for several months Varnadore and Weiss's relationship improved. The Weiss reconciliation was short-lived, however, and Mrs. Weiss again took up a relationship with Minder. She wound up marrying Minder for the third time, on May 15, 1997, after her divorce from Mr. Weiss was final on April 27, 1997.

On April 15, 1997, Varnadore filed a motion for change of custody based on an unspecified change of condition and again sought an emergency ex parte order awarding temporary physical custody to her. Varnadore appeared with counsel, and Weiss was present without counsel. The trial court granted Varnadore's motion. The order reflects that it was based on a confirmed oral agreement which had been reached by the parties prior to the request for hearing. The order vested temporary legal and physical custody of the children in Varnadore and Weiss. The order provided that Varnadore would have physical custody of the children until the 1996-1997 school year ended and provided liberal weekend visitation rights to Weiss.

In due course, the case came on for a final hearing on August 15, 1997, at which time the court heard from the parties and from witnesses. On August 29, 1997, following the hearing, the trial court, relying on OCGA § 19-7-1 (b.1), granted joint legal custody to both Weiss and Varnadore and specifically detailed visitation rights to Varnadore on the basis of OCGA § 19-7-1 (b.1). The court also provided inter alia that "[b]oth parties are on notice that this Court will monitor this case as necessary." Order, August 29, 1997.

Notwithstanding the fact that the case was scheduled for a final disposition, we note that at the conclusion of the August 15, 1997 hearing, the trial court stated inter alia:

> I will . . . talk to you as soon as I can about a — probably another temporary order if we can tolerate that, rather than any final order as to it. So much happens within a period of six to ten, twelve months in this case, from time to time, is one reason I'm leaning towards another temporary order rather than permanent.

Transcript, p. 78.

The transcript of the final hearing shows that, at the time of the hearing, the parties were not disputing the mother's physical custody of the children, although joint legal custody had been awarded to the

---

[2] Varnadore was given visitation rights every other weekend and flexible visitation during the weekdays.

parties in the April 15, 1997 order, but rather, the sole issue addressed at the August 15, 1997 hearing was the visitation rights of Varnadore. Counsel for Weiss stated the issue, thusly: "And so we understand also that this is not a hearing to decide whether or not custody will change away from the biological mother. This is a hearing to decide whether or not there should be Court-ordered visitation." Transcript, p. 10. Counsel for Varnadore agreed, stating:

> We don't . . . question the fact as long as she's married and there's stability in her life with Mr. Minder, fine. She can have custody. We're here so this grandmother, who's spent the last several years worrying about these grandchildren . . . can see these kids without being told no by her daughter. That's all we're here for . . . is grandparental visitation with Ms. Varnadore.

Transcript, pp. 13, 26.

We note the parties were addressing *physical*, not *legal* custody in the above-referenced statements. We further note that the trial court later issued an "Interim Temporary Order, Visitation Only," on December 19, 1997, providing a visitation schedule for Varnadore for the Christmas 1997 holidays.

In an action fixing custody of children, an award is generally final and exhaustive of the court's jurisdiction. Any attempt to retain jurisdiction and to make the custody award temporary is ineffective. Language purporting to retain jurisdiction will be viewed as surplusage and the order considered final. See *Broome v. Broome*;[3] *Buck v. Buck*.[4]

Weiss (now Minder) filed a motion for new trial on September 29, 1997. On October 17, 1997, she amended her motion for new trial and raised for the first time the contention that OCGA § 19-7-1 (b.1) is unconstitutional in that it violates the due process and privacy rights of the United States and Georgia Constitutions by allowing state interference with parental rights without a showing that the custodial parent is unfit and that such interference is necessary to protect the health and welfare of the child. The trial court read, considered, and denied the motion for new trial on April 24, 1999, approximately 20 months after the custody hearing.

Weiss/Minder then filed an application for discretionary appeal with our Supreme Court raising the constitutionality of OCGA § 19-7-1 (b.1). The Supreme Court held that it lacked constitutional jurisdiction as the trial court had not ruled on the constitutional question,

---

[3] *Broome v. Broome*, 212 Ga. 132 (91 SE2d 18) (1956).
[4] *Buck v. Buck*, 238 Ga. 540 (1) (233 SE2d 792) (1977).

citing *Yarbrough v. Ga. R. &c. Co.*[5] The application was then transferred to this Court, by order of the Supreme Court on June 17, 1999. This Court granted the application on July 16, 1999, and this appeal followed.

Weiss challenges the award of joint custody, contending that OCGA § 19-7-1 (b.1) does not authorize a court to award joint custody between a parent and a grandparent and that, even if the statute authorizes joint custody, the evidence does not support the award of custody in this case.

The superior court's authority to award joint custody of a minor child, including joint legal custody and/or joint physical custody, arises from the definitions contained in OCGA § 19-9-6, one of the statutes dealing with custody issues between parents. See OCGA § 19-9-3 et seq. The literal terms of OCGA § 19-9-6 (1), (2), and (3) show that both "joint legal custody" and "joint physical custody" involve a sharing of custody between the *parents*. In contrast, under OCGA § 19-9-6 (4), "sole custody" may relate to a person other than a parent. See *Baldwin v. Baldwin*[6] (applying joint custody provisions with respect to the parents of minor children); *Scott v. Scott*[7] (same). In *In the Interest of J. N. T.*,[8] this Court held, with reference to OCGA § 19-9-6 (3), that "joint physical custody" is divided physical custody between estranged parents and that the Code section "contemplates no other purpose sufficient to authorize . . . a true joint physical custody arrangement." See also *In the Interest of A. R. B.*[9] (physical precedent only). This is a perfectly rational statutory scheme, considering the fact that, traditionally, the constitutional rights of a parent could not be interfered with by the State or a third party, absent a showing of unfitness of such parent. It would generally make no sense to award joint custody to an unfit parent. Georgia law does not, however, preclude an award of joint custody to a third party by the trial court upon the consent of the parent to such an arrangement or upon a waiver by such parent of constitutionally protected parental rights, provided that the trial court determines that the award is in the best interest of the child. Rights and obligations which the court has no authority to create may become enforceable by order of the court where the parties agree to such an arrangement, and the court approves the agreement and incorporates it into the order of the court. An agreement to pay college expenses or to provide support after a child attains the age of majority are examples of such

[5] *Yarbrough v. Ga. R. &c. Co.*, 176 Ga. 780 (168 SE 873) (1933).
[6] *Baldwin v. Baldwin*, 265 Ga. 465 (458 SE2d 126) (1995).
[7] *Scott v. Scott*, 227 Ga. App. 346, 350 (489 SE2d 117) (1997).
[8] *In the Interest of J. N. T.*, 212 Ga. App. 498, 500 (441 SE2d 918) (1994).
[9] *In the Interest of A. R. B.*, 209 Ga. App. 324, 326 (2) (433 SE2d 411) (1993).

arrangements.

As noted above, Weiss argued in her application for discretionary appeal that OCGA § 19-7-1 (b.1) was unconstitutional for the reasons stated. However, that issue was removed from this case by the fact that this Court has no authority to review the constitutionality of a statute and our Supreme Court did not do so. Our Supreme Court has not, as yet, definitively addressed the constitutionality of the "best interest standard" set forth in OCGA § 19-7-1 (b.1). This issue may be addressed in cases presently pending before that court. See *Clark v. Wade;*[10] *Driver v. Raines.*[11]

Prior to the enactment of OCGA § 19-7-1 (b.1) in 1996, it was clear that a trial court had only a limited authority to award custody of minor children to the grandparents in a custody action with a parent. Absent consent, or a waiver of parental rights, the parent's custodial rights in such cases could be lost only upon a showing by clear and convincing evidence that the parent was either unfit or incapable of caring for the child under the standards of OCGA § 19-7-4 and that a failure to act would result in harm to the child, or that the parent was otherwise not entitled to custody under OCGA § 19-7-1. *Blackburn v. Blackburn;*[12] *Larson v. Larson.*[13]

OCGA § 19-7-3, Georgia's "Grandparent Visitation Statute," which provides for an original action by a grandparent for the establishment of visitation rights, was declared unconstitutional by our Supreme Court in 1995, under both our state and federal constitutions, in *Brooks v. Parkerson.*[14] In declaring OCGA § 19-7-3 unconstitutional, our Supreme Court held inter alia:

> [E]ven assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that visitation over the parents' objections on a showing that failing to do so would be harmful to the child. It is irrelevant, to this constitutional analysis, that it might, in many instances be "better" or "desirable" for a child to maintain contact with a grandparent. The statute in question is unconstitutional under both the state and federal constitutions because it does not clearly promote the health or welfare of the child and does not require a showing of harm before state interference is authorized.

(Footnote omitted.) *Brooks v. Parkerson,* supra at 194.

---

[10] *Clark v. Wade,* Case No. S00A1610.

[11] *Driver v. Raines,* Case No. S00A2014.

[12] *Blackburn v. Blackburn,* 249 Ga. 689, 692 (292 SE2d 821) (1982).

[13] *Larson v. Larson,* 192 Ga. App. 163 (384 SE2d 193) (1989).

[14] *Brooks v. Parkerson,* 265 Ga. 189 (454 SE2d 769) (1995).

In 1996, our legislature enacted OCGA § 19-7-1 (b.1), which specifically addresses additional authority for awarding custody to a grandparent in an action between parents or between parents and a grandparent. Notwithstanding *Brooks v. Parkerson*, it provides:

(b.1) Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, . . . parental power may be lost by the parent, . . . if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

Ga. L. 1996, pp. 412-413.

Subsequently, the constitutionality of OCGA § 19-7-1 (b.1) was raised before our Supreme Court in *Grantham v. Grantham*.[15] In *Grantham*, however, our Supreme Court concluded that the trial court had found that it was in the best interest of the child that custody be awarded to the grandmother *and* that the mother was not a fit and proper person to have custody of the child. The Supreme Court concluded that appellate review of the custody order in *Grantham* was impossible as the trial court's order contained potentially conflicting conclusions of law and no findings of fact to substantiate either one. The Supreme Court therefore vacated the trial court's judgment and remanded the case with direction that the trial court grant appellant's motion for findings of fact and conclusions of law and supplement its current order with findings which would allow meaningful appellate review of the decision. Given the present state of the law in this area, it would seem advisable for a trial court to include specific findings of fact and conclusions of law in similar cases, whether or not either of the parties has requested such inclu-

---

[15] *Grantham v. Grantham*, 269 Ga. 413 (499 SE2d 67) (1998).

sion under the authority of OCGA § 9-11-52.

In the present case, it is likewise not possible from the state of the record and the order of the court to determine what standard the trial court applied in its order and what evidence or agreement it relied upon in doing so. The trial court did not address whether or not it was relying on any consent to its custody order by Weiss under OCGA § 19-7-1 (b) or any waiver of her constitutional rights by her oral agreement to the joint custody arrangement. Being unable to appropriately review this case, we vacate the trial court's judgment and remand the case for further consideration, consistent with this opinion.

The issue of the constitutionality of OCGA § 19-7-1 (b.1) cannot be ruled upon by this Court for the reasons stated. On remand, the trial court can rule upon this issue and create a record thereof so that the matter may be properly reviewed at the appellate level in the event of a future appeal.

*Judgment vacated and case remanded. Eldridge and Barnes, JJ., concur.*

DECIDED NOVEMBER 3, 2000.

*E. Jerrell Ramsey*, for appellant.