S05A0722. BULLARD v. SWAFFORD.
(619 SE2d 665)

HINES, Justice.

We granted discretionary review in this dispute over child support for a child who attained the age of majority before completing his

secondary education to consider whether the superior court erred in determining that the child was not a full-time student, and consequently, in terminating the father's child support obligation pursuant to the parties' agreement which was made an order of the court. For the reasons which follow, we conclude that the superior court's judgment was in error and we reverse.

The parties, Jean Ann Bullard ("Bullard") and James Swafford ("Swafford"), are divorced. On July 2, 2002, the Superior Court of Polk County entered a "final consent order" regarding, inter alia, child support, which memorialized an agreement reached by the parties following mediation. The agreement provided, inter alia, that Swafford would pay child support of $160 a week for the couple's son, payable until

> such time as the child becomes eighteen (18) years of age, dies, marries, or otherwise becomes emancipated, except that if the child becomes 18 years of age while enrolled in and attending secondary school on a full time basis, then such support shall continue until the child completes secondary school, provided that such support shall not be required after the child attains twenty (20) years of age.

The son turned 18 years old on February 25, 2004, approximately three months before he was scheduled to graduate from high school on May 20, 2004. Due largely to voluntary class absences and tardiness, the boy did not have enough credits to graduate.[1] Though he planned to attend summer school to make up some of his missing credits, he did not do so after the Polk School District canceled the summer school program. He then enrolled in the 2004 fall semester at his high school for a full course load in order to obtain the units required for graduation.

Swafford ceased child support payments on May 21, 2004, the day after the son was originally scheduled to graduate. He then filed a "Motion for Declaratory Judgment or for Modification of Child Support" seeking a declaration that the son was emancipated or that there was a material change in circumstances since the agreement because of his son's alleged refusal to attend school and Bullard's alleged refusal to make him go; he asked that his child support obligation "be immediately halted." Bullard filed a counterclaim

---

[1] The superior court also found that the son had "a four-year cumulative grade point average of 1.095 on a 4.0 scale with failing scores for his last semester" in three courses, but the court attributed the lack of attendance as the prime factor in the failure to graduate.

asking that Swafford be held in contempt for his failure to pay child support since May 21, 2004.

Citing *Mattocks v. Matus*, 266 Ga. 346 (466 SE2d 840) (1996), and *Hayward v. Lawrence*, 252 Ga. 337 (312 SE2d 609) (1984), the superior court focused on the son's absences, tardiness, and failure to attend summer school and concluded that the son was not a "continuous full time student"; consequently, it ruled that Swafford's child support obligation terminated as of May 20, 2004, "when the 2003-04 school year ended and the [son] ceased attending school on a full time basis."

1. Bullard asserts that the superior court erred by expanding the scope of OCGA § 19-6-15 (e)[2] to require that a child be a full-time student in order to receive support when the child's efforts to complete his secondary education extend beyond the child's eighteenth birthday because there is no such requirement in the statute. But, a question of judicial "expansion" of the statute is not at issue in this case.

Swafford's support obligation stems not from the superior court's independent application of OCGA § 19-6-15 (e), but rather from the parties' agreement which was subsequently made an order of the court. Compare *Ferguson v. Ferguson*, 267 Ga. 886 (485 SE2d 475) (1997). A domestic obligation which a trial court has not ordered pursuant to statutory authority may become enforceable when the parties agree to it, and the court approves the agreement and incorporates it into an order of the court. *Weiss v. Varnadore*, 246 Ga. App. 654, 657 (541 SE2d 448) (2000). Parties may enter into an agreement regarding child support obligations as long as it is specific, does not contravene a statute, and does not violate public policy. *Kendrick v. Childers*, 267 Ga. 98 (1) (475 SE2d 604) (1996). There is no evidence that anything other than full-time enrollment or attendance in secondary school was available to the parties' child; therefore, it can hardly be said that the agreement term of full-time enrollment and attendance contravenes OCGA § 19-6-15 (e) or runs

---

[2] OCGA § 19-6-15 (e) provides:

The duty to provide support for a minor child shall continue until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs; provided, however, that, in any temporary or final order for child support with respect to any proceeding for divorce, separate maintenance, legitimacy, or paternity entered on or after July 1, 1992, the trier of fact, in the exercise of sound discretion, may direct either or both parents to provide financial assistance to a child who has not previously married or become emancipated, who is enrolled in and attending a secondary school, and who has attained the age of majority before completing his or her secondary school education, provided that such financial assistance shall not be required after a child attains 20 years of age. The provisions for support provided in this subsection may be enforced by either parent or the child for whose benefit the support is ordered.

afoul of public policy. However, the enforceability of the support provision is not the end of the inquiry.

2. The superior court misapplied the holdings in *Mattocks* and *Hayward* to the facts in this case. As has been stated, Swafford's obligation to continue child support for his son into majority while the son finished secondary school arose from the agreement between the parties. Under the plain language of the agreement, the son was to be "enrolled in and attending secondary school on a full time basis."

In *Mattocks* and *Hayward*, this Court interpreted the phrase "full time student" to "mean continuous attendance during the normal school year." *Mattocks v. Matus* at 346; *Hayward v. Lawrence* at 338. *Hayward*, unlike the present case, dealt with a child support agreement in which it was plain that the parties intended that the father would contribute to the children's college educations. Id. at 338. *Mattocks* also involved an agreed-to support obligation for an adult child pursuing a college degree. This Court determined that the son in *Mattocks* was "not in continuous attendance for the duration of the normal school year," i.e., not a full-time student, after conclusion of his first academic year in college because the son left school, worked, joined the military, and did not resume his college education until approximately 15 months later. Id. at 346. That is a far cry from the situation in this case involving a child's attempt to complete a secondary school education.

It is undisputed that Swafford's son's class absences and tardiness were largely responsible for his failure to graduate from high school in May 2004. However, the absences and lateness did not constitute an interruption in his continuous attendance during the normal school year. Periodic absences and lateness, even in significant number, did not transform either his enrollment or his attendance into anything less than full-time. There is no evidence that the son voluntarily "dropped out" of school or that he was suspended, expelled, or otherwise disqualified from attending school. In fact, the record shows that following the son's failure to graduate in May 2004, the school considered him a full-time student registered for the 2004 fall semester.[3] The fallacy of focusing on the son's absences and late arrivals to determine whether he was enrolled and/or attending full-time is readily apparent. Under such an analysis, even unanticipated health issues might render the child without support to finish high school.

---

[3] Swafford acknowledges that in the 2004 fall semester his son missed few classes and his grades greatly improved.

The superior court also cited the son's failure to enroll in summer school as an apparent additional justification for terminating Swafford's support obligation. However, neither *Mattocks* nor *Hayward* stand for the proposition that "continuous attendance during the normal school year" for the purpose of being a full-time student mandates attendance in summer school. Moreover, there is no evidence that by their agreement, the parties intended that their son be required to attend summer school. Swafford complains that had the boy enrolled in summer school, his support obligation would have ended months sooner. But, the plain language in the agreement shows that the parties clearly contemplated, for whatever reason, that it might take beyond their son's eighteenth birthday for him to finish secondary school, and that the father's support would continue until the son reached twenty should that be necessary.

The aim of the support provision is to facilitate the child's completion of secondary school.[4] The superior court's ruling runs afoul of this Court's precedent and defeats that important goal.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Parker & Lundy, Richard J. Lundy, Charles E. Morris, Jr.,* for appellant.

*Perrotta, Cahn & Prieto, Anthony N. Perrotta, Hannibal F. Heredia,* for appellee.

---

[4] This is in accord with the legislative purpose of OCGA § 19-6-15 (e). *Ferguson v. Ferguson,* supra at 887 (1).