A94A2290, A94A2291. PRIMERICA FINANCIAL SERVICES, INC. et al. v. WISE et al.; and vice versa.

(456 SE2d 631)

RUFFIN, Judge.

Edward H. Wise and other plaintiffs (collectively referred to as "Wise") brought this action against Primerica Financial Services, Inc. and other entities (collectively referred to as "Primerica") asserting claims of conversion, breach of contract, unjust enrichment and several RICO violations. The claims allegedly arose out of a series of complex independent contractor agreements between the parties, under which Wise sold term life insurance policies for Primerica on a commission basis. When problems arose concerning payment of those commissions, Wise filed this action.

Section 14 of one of the agreements contained an arbitration clause which forms the basis of these appeals. After Wise filed suit, Primerica moved the trial court to compel arbitration in accordance with the arbitration clause. While the trial court granted the motion, it struck two portions of the arbitration clause in accordance with a severability clause in the agreement. Both parties filed appeals from this order.

1. At the outset we note that the trial court found, and we agree, that the intentions of the parties as derived from the agreement are that the arbitration clause is governed by the Federal Arbitration Act,

9 USC § 1 ("FAA"). "Where the transactions out of which the claim for arbitration arose involve 'commerce' within the meaning of 9 USC § 1 of the Federal Arbitration Act, state law and policy must yield to federal law. [Cit.] 'Commerce,' within the meaning of the Arbitration Act, means interstate commerce, and the determination of whether a contract evidences transactions in interstate commerce is a question on which federal rules of contract construction and interpretation govern. [Cit.]" *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 224 (1) (338 SE2d 733) (1985).

Section 14 D of the agreement provides that "[t]he parties acknowledge and agree that they are engaged in, and that this Agreement evidences transactions involving, interstate commerce. . . ." Furthermore, notwithstanding a choice of laws provision stating Georgia law shall govern the agreement, the arbitration clause in this case makes two express references to the FAA, one of which provides that "Parties . . . shall have the right to enforce all provisions of this Section 14 . . . under the United States Arbitration Code, 9 U.S.C. § 1. . . ." It is clear from the foregoing provisions that the intentions of the parties were that arbitration would be governed by the FAA. "Thus, as with any other contract, the parties' intentions control. . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U. S. 614, 626 (2) (105 SC 3346, 87 LE2d 444) (1985).

## Case No. A94A2290

2. Turning to the specific enumerations of error, Primerica asserts that the trial court erred in striking a section of the arbitration clause concerning the eligibility of arbitrators. The section generally provides that in order to assure the neutrality and impartiality of the arbitrators, and to preserve the confidentiality of proprietary information, the arbitrators shall not have any past or present affiliation with the insurance industry. The trial court found this provision was "arbitrary, capricious, unfair and overreaching and designed . . . to oppress, coerce and intimidate Plaintiffs from seeking to bring claims against the Defendants and create[d] an inherently unfair, unjust and inequitable procedure designed to favor only the Defendants."

Section 5 of the FAA provides in pertinent part that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . , such method shall be followed. . . ." 9 USC § 5. While Primerica argues Section 5 is dispositive of the issue, the Court in *Mitsubishi*, supra, stated that in reviewing arbitration agreements, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." (Citations and punctuation omitted.) Id. at 627. Such a

showing could include, among other things, that " 'enforcement would be unreasonable and unjust. . . .' " Id. at 632.

In the instant case, the trial judge made such a finding. That finding was supported by the affidavit of Edward Wise where he stated he had "no meaningful opportunity to negotiate the terms and conditions of [the] contract." Moreover, considering the complex nature of the underlying substantive issues, we believe that by disqualifying anyone with any expertise in the field, unsophisticated individual plaintiffs are placed at an unreasonable disadvantage to the insurance companies who drafted the agreements. Under these circumstances we cannot conclude that the trial court's ruling on this issue was clearly erroneous. See *Worthington v. United States*, 21 F3d 399 (11th Cir. 1994). Accordingly, we find no error.

3. Primerica also asserts that the trial court erred in striking a section in the arbitration clause providing that an arbitration award would be subject to judicial review beyond that provided for in the FAA. The section provides in pertinent part that in addition to the grounds set forth in the FAA for vacating, modifying or correcting an award, a reviewing court "may also vacate, modify or correct the award if the conclusions of law are contrary to law, or if the findings of fact are not supported by the facts (as determined by whether there was *any* pertinent and material evidence to support the findings)." (Emphasis supplied.) The trial court found that the provision "violates the spirit and letter of the F.A.A. 9 U.S.C. § 10 and § 11 depriving such arbitration procedure of finality and putting such arbitration on a judicial review of 'any evidence' to support an appeal from an administrative agency."

Under 9 USC § 10, a reviewing court may vacate the award where it was procured by corruption, fraud, or undue means; where the arbitrators were partial or corrupt or guilty of other misconduct which prejudiced the rights of a party; or where the arbitrators exceeded their powers. Under 9 USC § 11, a reviewing court can modify or correct an award where there was a material mistake in a calculation or description in the award; where the arbitrators awarded on a matter not submitted to them; or where the award is imperfect in matter of form not affecting the merits of the controversy.

In *In the Matter of the Arbitration between Fils et Cables d' Acier de Lens & Midland Metals Corp.*, 584 FSupp. 240 (S.D.N.Y. 1984), the court interpreted a similar judicial review provision in light of the FAA. There the court found that "since resort to arbitration is by itself a product of contract, there appears no reason, absent a jurisdictional or public policy barrier, why the parties cannot agree to alter the standard roles [of the reviewing court]." Id. at 244. In this case Wise argues that such a provision expands the jurisdiction of the reviewing court beyond that provided under the FAA. However, as

the court in *Midland* pointed out, the review provisions in the FAA do not confer jurisdiction. Id. Before a party can seek review before a court, subject matter jurisdiction must exist independent of the FAA. Id. Since the review provisions in the FAA do not independently confer jurisdiction, we do not find the review provisions in the arbitration clause, in which the parties agreed to alter the role of the reviewing court, violative of the FAA. See id.

Furthermore, although the provision at hand does expand the court's review of an arbitration award, thereby removing some of the efficiency incentive for resorting to arbitration, we do not agree with Wise that it creates a process akin to permanently non-binding arbitration. The judicial review provided for in the agreement creates an "any evidence" standard similar to that required to support an appeal from an administrative agency in this state. Under this standard, a court would not be permitted to substitute its judgment for that of the arbitrators as to the weight of the evidence on questions of fact and would be required to confirm the award if there was any evidence to support it. See *Sawyer v. Reheis*, 213 Ga. App. 727 (1) (445 SE2d 837) (1994). Under these circumstances, we do not find the provision violative of the FAA or public policy and therefore agree with Primerica that the trial court erred in striking the provision from the agreement.

4. In Primerica's final enumeration of error, it asserts the trial court erred by including in its order language that was critical of the parties' arbitration agreement, unsupported by the evidence, unnecessary to the court's decision, and which might prejudice defendants in subsequent proceedings. The language about which Primerica complains generally includes statements that portions of the agreement were unreasonable and not made in good faith. As pointed out in Division 2, under *Mitsubishi*, supra, the trial court was permitted to consider whether the challenged provisions resulted from the kind of fraud or overwhelming economic power that would provide grounds for the revocation of any contract and that such showing could include, among other things, that enforcement would be unreasonable and unjust. Contrary to Primerica's argument, this language does evidence the trial court's findings of fact, which were necessary to the order under *Mitsubishi*, and as we ruled in Division 2, we cannot conclude that the findings were clearly erroneous. See *Worthington*, 21 F3d at 400. Accordingly, we find no error.

### Case No. A94A2291

5. Wise contends the trial court erred in "blue penciling" the otherwise unenforceable arbitration clause in an attempt to make it enforceable. Wise argues that the reasons for prohibiting blue-penciling

of restrictive covenants in employment contracts apply with equal or greater force in the case of the arbitration agreements in the instant case. Relying on *Richard P. Rita Personnel Svcs. Intl. v. Kot*, 229 Ga. 314 (191 SE2d 79) (1972), Wise contends that if severance of these two provisions is allowed in the instant case, then employers will be able to fashion truly ominous arbitration agreements with confidence that they will not be struck in their entirety, but simply pared down and enforced by the courts. See id. at 317. Wise asserts that the net effect of such a policy is that employers will intentionally draft unduly burdensome and complex arbitration agreements to deter employees who do not understand the legal system from pursuing claims against their employers. Accordingly, Wise urges us to either strike the arbitration clause in its entirety, or not at all.

"The 'liberal federal policy favoring arbitration agreements,' [cit.] manifested by [9 USC § 2] and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements: the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' [Cit.] As this Court recently observed, '(t)he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.' [Cit.] Accordingly, the first task of a court asked to compel arbitration of a dispute is *to determine whether the parties agreed to arbitrate that dispute.*" (Indentation omitted; emphasis supplied.) *Mitsubishi*, supra at 625-626.

While we do not deny the legitimacy of Wise's concerns regarding severance of arbitration agreements in general, those concerns cannot be analyzed in a vacuum. Under *Mitsubishi*, supra, the agreement, in its entirety, must be reviewed in light of the liberal federal policy favoring arbitration agreements and the parties' intentions in entering into those agreements. Reviewing the trial court's severance of the agreement in this light, we find the parties agreed to arbitrate. Furthermore, as the trial court duly noted, the parties in this case entered into the subject agreements and all sought to take advantage of them through performance. The agreements contained not only the disputed arbitration clause but also a severability clause. Under the latter clause, the parties agreed that "[i]f any . . . provision of the agreement shall be found to be void or unenforceable by any court or arbitration panel of competent jurisdiction, such finding shall have no effect upon any other . . . provision of the Agreement. . . ." Accordingly, we do not believe the trial court in this case erred in severing a provision it found to be unfair and overreaching, while compelling arbitration under the remaining provisions of the agreement.

6. Finally, Wise contends the trial court erred in enforcing the arbitration clause because it was expressly made unenforceable by the

Georgia Arbitration Act, OCGA § 9-9-1 ("GAA"). OCGA § 9-9-2 (c) (9) provides that "[a]ny contract relating to terms and conditions of employment" is unenforceable under the GAA "unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement." Wise argues that since it is undisputed that the arbitration clauses were not initialed, the agreement is unenforceable under the GAA. Because we believe the GAA has no application in the instant case, we disagree.

In *Southland Corp. v. Keating*, 465 U. S. 1 (104 SC 852, 79 LE2d 1) (1984), the Court found "nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." Id. at 11. Similarly, in *DiMambro-Northend Assoc. v. Blanck-Alvarez*, 251 Ga. 704 (309 SE2d 364) (1983), our own Supreme Court recognized " 'a Congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " Id. at 707 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1 (103 SC 927, 74 LE2d 765) (1983). Accordingly, we must conclude that " 'the state law and policy with respect [to the signature requirement] must yield to the paramount federal law. [Cit.]' [Cit.]" *CCC Builders v. City Council of Augusta*, 237 Ga. 589, 592 (229 SE2d 349) (1976). See also *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F2d 995 (8th Cir. 1972) (court disregarded a similar attorney signature requirement under the Texas arbitration code where arbitration was governed by FAA).

*Judgment affirmed in part, reversed in part. Birdsong, P. J., and Blackburn, J., concur.*

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Wise contends the U. S. Supreme Court's decision in *Volt Info. Sciences v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U. S. 468 (109 SC 1248, 103 LE2d 488) (1989), requires application of the GAA in addition to the FAA. In *Volt*, the Court held that where the contract involved interstate commerce and the parties agreed that arbitration would be governed by state law, the FAA did not preempt application of that state's arbitration laws. Id. at 472. Unlike *Volt*, the arbitration clause in this case contained an express provision that it is to be governed by the FAA. Accordingly, we concluded in Division 1 of our decision that notwithstanding a Georgia choice of laws provision, the parties clearly intended that the arbitration clause would be governed by the FAA. Since we did not conclude that the parties intended the arbitration clause would be governed by *both* the FAA and the GAA, we did not reach the preemption issue addressed in *Volt*.

*Motion for reconsideration denied.*

DECIDED MARCH 14, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995 —

*Chilivis & Grindler, Nickolas P. Chilivis, Anthony L. Cochran, John K. Larkins, Jr., J. D. Dalbey, King & Spalding, Frank C. Jones, Nolan C. Leake, Reginald R. Smith, Michael E. Ross*, for appellants.

*Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow*, for appellees.