**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GERALD E. BROWN,

        Plaintiff - Appellant,

    v.

THE COLEMAN COMPANY, INC., a
Delaware corporation,

        Defendant - Appellee.

No. 99-3181

---

GERALD E. BROWN, an individual,

        Plaintiff - Appellee,

    v.

COLEMAN COMPANY, INC., a
Delaware corporation,

        Defendant - Appellant.

No. 99-3203

---

Appeal and Cross-Appeal from the United States District Court
for the District of Kansas
(D.C. No. CV-97-1539-MLB)

---

Lazar Pol Raynal, McDermott, Will & Emery, Chicago, Illinois (Michael A. Pope
and Joseph G. Fisher, McDermott, Will & Emery, Chicago, Illinois; Larry B.
Spikes, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kansas, with him on
the brief), for Plaintiff-Appellant-Cross-Appellee.

Daniel Lynch, Jenner & Block, Chicago, Illinois, (Jerold S. Solovy, Jeffrey T. Shaw and Jennifer L. McManus, Jenner & Block, Chicago, Illinois; Darrell L. Warta, Foulston & Siefkin, Wichita, Kansas, with him on the brief) for Defendant-Appellee-Cross-Appellant.

---

Before **BALDOCK, MAGILL,**[*] and **LUCERO,** Circuit Judges.

---

**MAGILL,** Circuit Judge.

---

A three-member arbitration panel awarded Gerald E. Brown a total of $3,617,930 for breach of employment contract, wrongful termination, and defamation by the Coleman Company (Coleman). Brown brought an action under the Federal Arbitration Act to confirm the award. The district court vacated the $2,322,335 portion of the award that was based on the value of certain stock options and confirmed the rest of the award, including $350,001 for defamation. Brown appeals the vacatur of the $2,322,335 award for the stock options, and Coleman appeals the confirmation of the $350,001 award for defamation. We REVERSE in part and AFFIRM in part.

## I.

Brown, a twenty-three year employee and the president of the Powermate

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

division of Coleman since 1989, was terminated from his position by the CEO of Coleman, Jerry Levin, on June 19, 1997. Shortly thereafter, Levin met with Powermate employees and claimed that Brown had been fired for misuse of company funds and assets. Coleman later notified Brown that he was being terminated under the termination for cause clause of his employment contract. Under the contract, Brown would be entitled to only vested stock options if he were terminated for cause, however he would be entitled to all stock options, both vested and unvested, if he were terminated without cause.

Originally, Brown filed a complaint in Illinois state court seeking specific performance of the employment contract. Coleman had the case removed to the United States District Court for the Northern District of Illinois. The District Court for the Northern District of Illinois partially granted specific performance, ordered arbitration of the claims at issue in this appeal, and, pursuant to the contract, transferred the case to the United States District Court for the District of Kansas.

The arbitration was heard by a three-member panel operating under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (AAA). Brown challenged whether his termination was for cause, and further claimed the explanation presented by Levin to the Powermate employees constituted defamation. The panel found for Brown on all

of his claims and made three separate awards to him. First, the panel awarded $945,594 for breach of employment contract and wrongful termination, including $53,589 for all of Brown's outstanding stock options as valued on October 7, 1997. Coleman does not challenge this award. Second, the panel awarded an additional $2,322,335 (stock options award) based on the increased value of Brown's stock options by April 1998. Powermate was bought by Sunbeam, Inc. in early 1998 and, under the contract, all of Brown's stock options would have automatically vested at that time. Apparently, the value of Coleman stock increased exponentially in a six-month span, as the total value of the stock options would have been $2,375,924 if the options were exercised in April or May 1998. The arbitration panel justified this award on two separate grounds: 1) A contract interpretation, finding that Brown was never properly terminated under the contract, and thus, should have still been able to exercise his stock options in April 1998; and 2) a decision in equity requiring the award lest Coleman be unjustly enriched. The theory of the equity decision being, that Coleman terminated Brown because it knew the Powermate division would soon be sold and Brown would then be entitled to stock options that would cost the corporation over $2,000,000. The third, and final award, was $350,001 for Brown's defamation claim.

The District Court for the District of Kansas confirmed the first award of $945,594, vacated the second award of $2,322,335 for the additional value of the stock options, and confirmed the third award of $350,001 for the defamation. Brown appeals the vacatur of the stock options award and Coleman appeals the confirmation of the defamation award.[1]

## II.

The district court vacated the stock options award based on two exceptions to the extreme deference normally given to arbitrators' decisions. First, the district court rejected the panel's interpretation of the contract as not drawing its essence from the contract as required by United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). Second, the district court held the panel could not exercise any powers of equity and thus the arbitrators exceeded their powers in violation of the Federal Arbitration Act, specifically 9 U.S.C. § 10(a)(4). While this Court reviews the district court's decision de novo, we must give extreme deference to the determination of the arbitration panel for "the standard of review of arbitral awards is among the narrowest known to law." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (quotation omitted). "By agreeing to arbitrate, a party

---

[1]Coleman does not appeal the first award of $945,594.

trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 31 (1991).

## A. Interpretation of the Contract

Under <u>Enterprise Wheel</u> and its progeny, this Court must determine "whether [the arbitrator] was even arguably construing or applying the Agreement thus drawing the essence of his award from the Agreement." <u>International Bhd. of Elec. Workers, Local Union No.611, AFL-CIO v. Public Serv. Co. of NM</u>, 980 F.2d 616, 618 (10th Cir. 1992). The arbitration panel found Coleman had failed to properly terminate Brown for cause under paragraph 5(c) of the contract. Further, Coleman did not meet the requirements for terminating Brown without cause under paragraph 5(f) because proper notice was never given as required by paragraph 5(g). The panel "inferred from the evidence that one of Coleman's considerations in choosing a 'for cause' termination was to avoid paying Mr. Brown for what he was entitled to receive under the contract if his termination was without cause." Thus, Coleman's actions were "tantamount to no termination at all." The panel further stated that four cases supported the extension of any stock options until April or May 1998 when the options would have been valued at $2,375,924.

The district court found that the panel erred, and that there was no support for the position that Brown was never actually terminated, nor any support to extend the time period during which the stock options could be exercised. However, this Court has held "a court may not overturn an arbitrator's decision even when error has been committed." NCR Corp., E & M-Wichita v. District Lodge No. 70, 906 F.2d 1499, 1504 (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, 484 U.S. 29, 37-40 (1987)). Brown and Coleman contracted for the arbitrator's construction of the contract not a judge's construction. See Enterprise Wheel, 363 U.S. at 599 (stating "the courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his.").

The arbitration panel interpreted the contract in making this award. Perhaps the panel did not interpret the contract in the manner in which the district court would have, particularly as to the termination without cause clause and its relationship to the notice of termination requirement. However, how the district court would have interpreted the contract is not at issue. Because the $2,322,335 stock options award was based on the contract, the panel's decision must be confirmed and the district court reversed.

**B. Equity**

Further, this Court now determines the panel's decision also was justified under its powers to provide an equitable remedy. It is beyond question that an arbitrator may have broad equity powers if the rules under which he is operating provide for equitable relief. See Gilmer, 500 U.S. at 32. The question is whether those powers of equity were available to the arbitration panel in this case.

This arbitration was conducted pursuant to the AAA Employment Dispute Rules, which provide "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." AAA Employment Disputes Rule 34(d).[2] Because no reported Federal case has examined Rule 34(d), or its predecessor Rule 32(c), the district court held Rule 34(d) did not permit the panel to exercise powers of equity based on other courts' decisions limiting current AAA Commercial Arbitration Rule 45(a),[3] which allows "any remedy or relief that the arbitrator deems just and equitable, and within the scope of the agreement of the parties." AAA Commercial Arbitration Rule 45(a)

---

[2] Prior to January 1999, AAA Employment Disputes Rule 34(d) was numbered Rule 32(c). As the two versions contain identical language, the Court refers to the applicable Employment Disputes Rule as 34(d) throughout this opinion.

[3] Prior to January 1999, AAA Commercial Arbitration Rule 45(a) was numbered Rule 43. As the two versions contain identical language, the Court refers to the applicable Commercial Arbitration Rule as 45(a) throughout this opinion.

(emphasis added). If the emphasized language in Rule 45(a) limits the equitable powers of the arbitrator in commercial arbitrations to the express language of the contract, as suggested by Swift Indus., Inc. v. Botany Ind., Inc., 466 F.2d 1125, 1132-33 (3d Cir. 1972), the absence of such language in Rule 34(d) would logically mean that the equitable powers of arbitrators operating under the AAA Employment Disputes Rules are not limited to the same extent as under the AAA Commercial Arbitration Rules. Coleman drafted Brown's employment contract, and, thus, chose the rules of arbitration that would be used to settle disputes. Coleman was not bound to choose rules that provided such broad power to the arbitrator to grant equitable relief, however, having chosen the rules of arbitration, Coleman is now bound by those rules. We now hold that Rule 34(d) of the AAA Employment Disputes Rules permits the crafting of broad equitable relief, and that the panel did not exceed its power by granting the equitable relief of extending the time in which stock options could be exercised.

We reverse the district court and reinstate the arbitration award of $2,322,335 for the additional value the stock options would have held in May 1998 based on both the panel's interpretation of the contract and on its exercise of powers of equity in crafting relief.

## III.

The district court found Brown's defamation claim fell within the scope of the arbitration clause in Brown's employment contract. The question of whether a claim is subject to arbitration is for the courts, and the decision of the arbitrator is given no weight. See ARW Exploration, 45 F.3d at 1461. The arbitration clause in this contract states "all disputes or controversies arising under or in connection with this Agreement . . . will be settled exclusively by arbitration." When a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated. See Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.14 (1985); Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 376 (1974). The arbitration clause before us today is the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract. Because arbitration is only required where the parties have contracted for it, "the exact content of the allegedly defamatory statement must be closely examined to see whether it extends to matters beyond the parties' contractual relationship." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir. 1995). When a contract's arbitration clause is broad, the strong presumption is in favor of issues being subject to arbitration. See id. Levin told the Powermate employees that Brown had been terminated for

-10-

failure to uphold his contract with Coleman and claimed Brown had misused corporate assets. Levin's defamatory explanation dealt with the termination of Brown's employment and his supposed violation of his employment contract. The defamation claim touches the contract because the contract and Brown's supposed violation of it are the very things discussed in the defamatory statement. The district court's finding that the arbitration panel correctly asserted jurisdiction over the defamation claim is affirmed.

## IV.

For the foregoing reasons, we reverse the district court's vacatur of the $2,322,335 stock options award, affirm the district court's confirmation of the $350,001 defamation award, and reinstate the panel's award in its entirety.

-11-