**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 19, 2013**

# In the Court of Appeals of Georgia

A13A1115. DAVIDSON v. A. G. EDWARDS & SONS, INC. et al.

ANDREWS, Presiding Judge.

Jon V. Davidson, Jr. appeals from the trial court's order compelling him to arbitrate his defamation claim against his former employer, A. G. Edwards & Sons, Inc., and others[1] ("A. G. Edwards"). He contends that his post-termination of employment claim does not fall within the scope of the arbitration clause at issue under the Georgia Arbitration Code, arguing that he did not separately initial it as required by OCGA § 9-9-2 (c) (9), and that his claim, as a personal injury claim, is exempt from arbitration under OCGA § 9-9-2 (c) (10). Davidson also claims that the

---

[1] Janice Hutson, Wells Fargo Advisors Financial Network, LLC, formerly known as Wachovia Securities Financial Network, LLC (DE), doing business as Wachovia Securities, LLC, as successors-in-interest and in liability to A. G. Edwards & Sons, Inc., Wells Fargo Advisors, LLC.

trial court erred in enforcing the arbitration clause, arguing (i) that, by its own terms, the arbitration clause does not extend to future tort claims, and (ii) that such claims are not subject to arbitration under the Federal Arbitration Act ("FAA") as not involving interstate commerce. Finally, Davidson challenges the trial court's refusal to reopen discovery. Discerning no error, we affirm.

The record shows that Davidson began working for A. G. Edwards as a broker/dealer in 1994, serving customers in at least 16 states. He signed a written employment contract that contained the following arbitration clause:

> You agree that any controversy or dispute arising between you and [A. G.] Edwards in respect to this agreement or your employment by [A. G.] Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.

Davidson voluntarily retired from the firm on April 5, 2007. Shortly after his departure, A. G. Edwards sent letters to Davidson's former customers encouraging them to remain with A. G. Edwards rather than to follow Davidson in his new venture to avoid a potentially less favorable fee structure.[2] The letter read, in part, "[a]lthough

---

[2] Pertinently, these letters stated:

> As with any firm in the industry, there would be an account transfer fee if you decide to move your account. Also, make sure you know what

2

you have developed a relationship with Jon V. Davidson, please ask yourself if it is in *YOUR best interest* to transfer your account." (emphasis in original.) Given the foregoing, Davidson filed the underlying complaint seeking damages for the intentional tort of defamation on July 13, 2007. A. G. Edwards timely answered and thereafter moved to compel arbitration and to stay proceedings, which motion the trial court granted. We granted Davidson's application for interlocutory appeal, and the instant appeal followed.

We review de novo a trial court's order granting or denying a motion to compel arbitration because "the construction of an arbitration agreement, like any other contract, presents a question of law." (Citations omitted.) *Cash In Advance of Florida, Inc. v. Jolley*, 272 Ga. App. 282 (612 SE2d 101) (2005).

1. The trial court's order requiring arbitration was not error.

---

kind of annual account fees you would have to pay at another firm. At A. G. Edwards, we do not have fees on our basic brokerage accounts. Know that at other firms you may be subject to minimum account fees depending on the size of your account or even be pushed out to a call center if this new firm decides your account is not large enough for you to continue your relationship with Jon V. Davidson. Is it worth transferring your account?

a. *Preemption*. By his first and second enumerations of error, Davidson asserts that the trial court's order granting A. G. Edwards' motion was error because he had not separately initialed the arbitration clause at issue as required by OCGA § 9-9-2 (c) (9) and, in any event, his complaint, as averring a claim for personal injury, was exempt from arbitration under OCGA § 9-9-2 (c) (10). We disagree.

This Court has held that the FAA, 9 USC § 1, et seq., preempts state law and policy with respect to the signature requirement of OCGA § 9-9-2 (c) (9). *Langfitt v. Jackson*, 284 Ga. App. 628, 635 (3) (644 SE2d 460) (2007), citing *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 41 (6) (456 SE2d 631) (1995). Although this Court has not previously addressed whether the FAA preempts OCGA § 9-9-2 (c) (10), insofar as it exempts from arbitration "personal bodily injury"[3] claims, we find no reason why there should not be preemption in this regard as well. The FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements. *Results Oriented v. Crawford*, 245 Ga. App. 432, 436 (1) (a) (538 SE2d 73) (2000); see also *Volt Information Sciences v. Bd.*

---

[3] We note that OCGA § 9-9-2 (c) (10) exempts from arbitration claims for "personal bodily injury" rather than claims for "personal injury." The former as necessarily narrower than the latter, it appears that even were there no preemption, Davidson's defamation claim would not be excluded from arbitration under Georgia law.

*of Trustees &c.*, 489 U. S. 468, 477 (109 SCt 1248, 103 LE2d 488) (1989) ("[T]o the extent that [state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it will be preempted by the FAA.) (citation and punctuation omitted.); see also *Primerica*, supra, 217 Ga. App. at 41 (6) (liberal federal principal of favoring enforceability of arbitration agreements not subject to "state substantive or procedural policies to the contrary.") (citation omitted.)

b. *Enforceability.*

(1) *Post-employment (future) tort claim.* Davidson claims that the arbitration clause at issue is unenforceable under the FAA because the terms of such clause do not extend to claims arising after the termination employment; and the defamation claim he alleges, an intentional tort, does not involve interstate commerce under the FAA.[4] The question of whether the post-termination claim which underlies this appeal is subject to arbitration is one of first impression. We are persuaded that the governing federal law on this question should control. In *Brown v. Coleman Co.*, 220 F3d 1180, 1184 (III) (10th Cir. 2000), the court held that controlling question should

---

[4] The FAA applies to any "contract evidencing a transaction involving commerce." 9 USC § 2.

5

be whether the alleged tort of defamation "touch[ed] the underlying contract." Id. Or, stated otherwise, did it involve significant aspects of the employment relationship. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F2d 1163, 1167 (8th Cir. 1984).

In *Brown*, the arbitration clause read that "'all disputes or controversies arising under or in connection with this Agreement will be settled exclusively by arbitration.'" (Punctuation omitted.) *Brown*, supra, 220 F3d at 1184 (III). The arbitration clause in Davidson's employment contract is virtually identical to that in *Brown* as extending to "any controversy or dispute arising between [Davidson] and [A. G.] Edwards in respect to this agreement or your employment by [A. G.] Edwards. . . ." Moreover, *Brown* is but a part of a growing trend in the U. S. Circuit Courts of Appeals. See, e.g., *Morgan*, supra, 729 F2d at 1167 (claims filed almost two years after termination of employment alleging that Smith-Barney communicated complaints of former customers to NSYE enforcement agencies and deliberately misinformed customers that Morgan's brokerage license had been suspended and ordered to arbitration); *Aspero v. Shearson American Express*, 768 F2d 106, 109 (6th Cir. 1985) (post-employment claim for defamation, invasion of privacy, and intentional infliction of emotional distress filed a year after termination ordered to

6

arbitration where Shearson vice president allegedly told several potential employees that plaintiff was terminated for unauthorized trading violations).

We make no judgment as to whether A. G. Edwards' letters of which Davidson complains can be read as implying that he breached obligations he owed to A. G. Edwards or its customers in violation of the terms of his employment agreement. However, in averring by his complaint that such letters "imputed the crime[s] of theft, fraud, deceit, conversion of monies, and other illegal conduct to [him], " it is clear that the defamation claim which Davidson alleges is based upon statements related to his handling of his clients' accounts while employed by A. G. Edwards. Accordingly, because the alleged defamation touched Davidson's employment contract, the trial court did not err in granting A. G. Edwards' motion to compel arbitration after his employment terminated. *Brown,* supra, 220 F3d at 1184 (III); *Morgan*, supra, 729 F2d at 1167.

(2) *Interstate Commerce*. We note that the record shows that Davidson's employment at A. G. Edwards was inclusive of a clientele beyond the State of Georgia. However, given our disposition of Division b. (1), supra, we need not address Davidson's claim that the trial court erred in enforcing the arbitration clause

7

on such basis or otherwise because his defamation claim did not involve interstate commerce foreclosing arbitration under the FAA.

2. The trial court having correctly granted A. G. Edwards' motion to compel arbitration and stay discovery, as above, its order denying Davidson's motion to reopen discovery was proper. See *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 674-675 (2) (583 SE2d 466) (2003) (defendant's conduct of discovery in furtherance of litigation waives right of arbitration).

*Judgment affirmed. Dillard and McMillian, JJ., concur.*