**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A1281. WAFFLE HOUSE, INC. v. PAVESI.

BETHEL, Judge.

Waffle House, Inc. brings this interlocutory appeal from the trial court's denial of its motion to compel arbitration. Because the trial court erred in determining that the relevant arbitration agreement did not require arbitration of the underlying claims in this case, we reverse.

"The standard of review from the denial of a motion to compel arbitration is whether the trial court was correct as a matter of law." *D.S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005) (footnote omitted). Moreover, as this case involves the interpretation of an agreement between the

parties, we note that "the construction of a contract is a matter of law for the court that is subject to de novo review." *Id*.

This appeal arises from a lawsuit filed against Waffle House by Pamela Pavesi, the court-appointed guardian and custodian of Brian Mikeals. The record before us[1] indicates that in July 2010, Mikaels began working at a Waffle House restaurant which was then run by a franchisee of Waffle House. In October 2015, the restaurant where Mikaels worked was re-purchased from the franchisee by Waffle House. That day, all employees of that restaurant, including Mikaels, were notified that their employment with the franchisee had ended and that they had been hired by Waffle House on a probationary basis. Mikaels and the other employees were also notified

---

[1] Because our review of this case is limited to determining whether the underlying allegations are subject to arbitration pursuant to the agreements entered into by Mikaels and Waffle House, we essentially treat the allegations of Pavesi's complaint as true. *See BellSouth Corp. v. Forsee*, 265 Ga. App. 589, 591 (595 SE2d 99) (2004) ("[A] court considering arbitrability is not to rule on the potential merits of the underlying claims." (citation and punctuation omitted)). Because the allegations set forth in the complaint do not address the arbitration agreements entered into by Mikaels and Waffle House, we must also necessarily consider evidence and documents outside the pleadings. Thus, in light of the need for the parties to establish in the record the terms and conditions of Mikaels' employment and the process by which he was hired, including the terms of the arbitration agreements he entered into with Waffle House, we have also considered the evidence adduced through the limited discovery ordered by the trial court for such purposes as well as undisputed representations regarding the facts and circumstances of this case made by counsel on the record before the trial court.

that in order to obtain regular, non-probationary employment with Waffle House, they would be required to re-apply for employment and complete and agree to the terms of a variety of documents, including an arbitration agreement. Mikaels completed and submitted an electronic version of the documents, which included his assent to the arbitration agreement, on November 6, 2015.

At the time, Waffle House's electronic document system was encountering a number of difficulties such that Waffle House could not contemporaneously confirm that Mikaels and others had completed the electronic paperwork, including their assent to the arbitration agreement.[2] As a result, Mikaels and others were asked to complete and sign paper versions of employment application materials, which included an arbitration agreement. Mikaels did so on November 14, 2015.

On December 23, 2015, while at work, one of Mikaels' co-workers placed an illegal substance in his drink which caused him to suffer severe injuries. Pavesi, his

---

[2] Testimony by a witness representing Waffle House indicates that, at the time Waffle House experienced these difficulties with its systems, Mikaels had actually completed all necessary applications and documents electronically, including the mandatory arbitration agreement. This was determined after Waffle House's electronic application system was "corrected." Testimony from Waffle House's chief technology officer confirmed that Mikaels' electronic application and the accompanying documents, including the arbitration agreement, were completed and submitted electronically on November 6, 2015.

court-appointed guardian and custodian, brought suit on Mikaels' behalf against Waffle House alleging claims for negligent hiring, supervision, and retention of Mikaels' co-worker who attacked him. Pavesi's lawsuit also alleged that Waffle House had been negligent in its training of its employees and managers and that it had negligently failed to keep the work premises safe. Pavesi's suit sought damages and demanded a jury trial.

Waffle House answered the complaint and filed an emergency motion to compel arbitration. In support of its motion, Waffle House argued that the arbitration agreements signed by Mikaels on November 6 and November 14 required the claims alleged in Pavesi's suit to be handled through mandatory binding arbitration.

Following a hearing, the trial court denied this motion. In its ruling, the trial court found that the November 14 agreement superseded the November 6 agreement because the two agreements contained materially different terms while addressing the same subject matter. Specifically, the trial court noted that the "choice of law" provisions in the two agreements were materially different.

The November 6 agreement contained a clause providing that "[t]his Arbitration Program shall be governed by and interpreted in accordance with the Federal Arbitration Act and any federal common law interpreting that Act." In

4

contrast, the November 14 agreement contained a clause providing that the "agreement should be construed in a manner consistent with the principles and provisions of the Federal Arbitration Act . . . [T]his Agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia[.]"

The November 14 agreement also provided that it was to apply to claims "arising out of any aspect of or pertaining in any way to [Mikaels'] employment[.]" The agreement further provided that "claims that are arbitrable . . . include, but are not limited to . . . tort claims[.]" The November 14 agreement also contained a merger clause, indicating that it was the "complete agreement of [Mikaels and Waffle House] on the subject of arbitration disputes[.]"

Interpreting the choice of law provision in the November 14 agreement, the trial court determined that by providing that the agreement was to be "governed by and interpreted in accordance with the laws of the State of Georgia," the parties had agreed that any arbitration of Mikaels' claims against Waffle House was governed by Georgia law, and that accordingly the Georgia Arbitration Code, not the Federal Arbitration Act, would apply. Further, the trial court determined that because the Georgia Arbitration Code had been interpreted to exclude personal bodily injury claims from its coverage, Mikaels could not be compelled to arbitrate his claims

5

against Waffle House pursuant to the November 14 agreement. The trial court further ruled that Mikaels' claims were not subject to mandatory arbitration because his injuries were not the result of his employment relationship with Waffle House, and were thus not covered by the November 14 agreement.

Following its order, the trial court filed a certificate of immediate review authorizing Waffle House to seek an interlocutory appeal. Waffle House filed an application seeking such review with this Court, which we granted.[3] This appeal followed.

1. Waffle House first argues that the trial court erred by finding that the November 6 and November 14 agreements contained materially different terms, such that the agreements merged, with the terms of the November 14 agreement controlling. We find no error in the trial court's determination.

In this case, the November 6 and November 14 agreements clearly dealt comprehensively with the same subject matter—the circumstances and conditions under which claims between Mikaels and Waffle House would be subject to arbitration. Because the two agreements had different terms, the agreement entered into later in time controls. *See Atlanta Integrity Mortg., Inc. v. Ben Hill United*

[3] *See* Case number A17I0128.

6

*Methodist Church, Inc.*, 286 Ga. App. 795, 797 (650 SE2d 359) (2007) ("Under the merger rule, an existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." (citation and punctuation omitted)). Moreover, through the merger clause in the November 14 agreement, providing that it contained the "complete agreement of [Mikaels and Waffle House] on the subject of arbitration disputes," the parties expressed their intention that the November 14 agreement would supersede and replace any prior agreements on that subject matter. *See MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 86 (4) (761 SE2d 500) (2014). Thus, the trial court was correct in determining that the provisions of the November 14 agreement superseded those of the November 6 agreement.

2. Waffle House next argues that the trial court erred when it determined that the choice-of-law provision in the November 14 agreement did not require application of the Federal Arbitration Act ("FAA") to the parties' dispute. We agree with Waffle House.

The choice-of-law provision in the November 14 agreement provides, in relevant part, that "this agreement should be construed in a manner consistent with the principles and provisions of the Federal Arbitration Act . . . [T]his Agreement

shall be governed by and interpreted in accordance with the laws of the State of Georgia[.]" On the basis of this language, the trial court determined that the provisions of Georgia law (and thus, the provisions of the Georgia Arbitration Code) govern the agreement and that the FAA would not apply to the parties' dispute. This was in error.

The trial court's reading of the choice-of-law provision violates a core principle of contractual interpretation in that it renders the provision's express reference to the FAA surplusage. As the General Assembly has instructed with regard to contract interpretation, "[t]he construction which will uphold a contract in whole and in every part is to be preferred[.]" OCGA § 13-2-2 (4). Moreover, "it is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms." *Forsyth Cty. v. Waterscape Serv., LLC*, 303 Ga. App. 623, 631 (2) (a) (694 SE2d 102) (2010) (citation omitted).

In this case, it strains credulity to believe that the parties' express reference to the FAA in the choice-of-law provision evinced something other than their intention

that the FAA govern any arbitration proceedings between them.[4] Moreover, the provision's reference to Georgia law does not require a different conclusion. As this Court has previously discussed "even when there is a choice of law provision, if the intent of the parties indicates that arbitration would be governed by the FAA, this Court will enforce the intentions of the parties." *Results Oriented, Inc. v. Crawford*, 245 Ga. App. 432, 436-37 (1) (a) (538 SE2d 73) (2000) (citation omitted). In *Crawford*, the arbitration agreement at issue contained separate clauses that provided both that the agreement was to "governed by the Federal Arbitration Act" and that it was to be "governed by the laws of the State of Alabama." *Id*. at 435-36. Even with the presence of a clause providing for a governing state law, this Court held that the agreement at issue "without question invokes both the substantive law and procedure of the FAA." *Id*. at 437 (1) (a); *see also Primerica Fin. Serv., Inc. v. Wise*, 217 Ga. App. 36, 36-37 (1) (456 SE2d 631) (1995) ("[N]otwithstanding a choice of laws provision stating Georgia law shall govern the agreement, the arbitration clause in this case makes two express references to the FAA . . . It is clear from the foregoing

---

[4] In arguing for a different result, Pavesi points this Court to the distinctive language in the choice of law provision which provides that the FAA "should" apply to the agreement whereas Georgia law "shall" apply. We can discern no workable distinction between these terms, as "should" and "shall" in this context are both used as prescriptive terms that instruct or set forth some form of obligation.

provisions that the intentions of the parties were that arbitration would be governed by the FAA.")

As we have noted in other instances, the reference to a governing state law in an arbitration agreement calling for application of the FAA is not surplusage. General principles of contract law govern the formation, interpretation, and enforceability of arbitration agreements, and whether there is a valid agreement to arbitrate is generally governed by state law. *Triad Health Mgmt. of Ga., III, LLC, v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009) (citations omitted). Moreover, as Pavesi conceded at oral argument, Georgia law permits parties to agree to arbitrate claims between them and expressly permits them to elect that such arbitration will be governed by the FAA. *See Primerica*, 217 Ga. App. at 36-37 (1). We thus agree with Waffle House that the FAA governs any arbitration of claims covered by the November 14 agreement.[5]

---

[5] Because we determine that the November 14 agreement provides that the FAA governs any arbitration between Waffle House and Mikaels arising under that agreement, we need not address whether Mikaels' claims specified in the underlying lawsuit are arbitrable under the Georgia Arbitration Code. Moreover, because Georgia law permits parties to an agreement to elect to be governed by the FAA, we need not engage in the construction of federal law to address any issues relating to preemption of the Georgia Arbitration Code by the FAA.

3. Waffle House next argues that the trial court erred in determining that Mikaels' claims fell outside the scope of the November 14 agreement. We agree with Waffle House.

The November 14 agreement provided that it was to apply to claims "arising out of any aspect of or pertaining in any way to [Mikaels'] employment[.]" The agreement further provides that "claims that are arbitrable . . . include, but are not limited to . . . tort claims[.]" The expansive language of this provision suggests that the parties intended to include within the coverage of this agreement any claim Mikaels had against Waffle House that might in any way concern, relate to, or involve his employment with Waffle House, except where specific exceptions were set forth in the agreement.[6] Moreover, each of the claims brought by Pavesi against Waffle House are tort claims.

This Court has given broad effect to similar language in other cases. In *Wedemeyer v. Gulfstream Aerospace Corp.*,[7] this Court emphasized that

---

[6] The agreement provides, for instance, that claims for workers' compensation or unemployment compensation benefits (in states other than Texas) are not subject to arbitration under the agreement.

[7] 324 Ga. App. 47, 51-52 (2) (749 SE2d 241) (2013) (citation, punctuation, and emphasis omitted).

11

under Georgia law, where a contract provides that a claim must arise out of a specified relationship, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship. Indeed, nothing more than a slight causal connection is required to show that a claim arose out of a specified relationship set forth in a contract.

*In Wedemeyer*, the arbitration agreement at issue provided that it was to cover claims "regarding or arising from the employment relationship" between the plaintiff and his then-former employer. 324 Ga. App. at 52. This Court ruled that, due to the breadth of this language, the arbitration agreement only excluded the employee's claims "which do not have any relationship to an employee's work or relationship to" the employer. *Id*. Because the employee's claims arose from an incident that occurred during his employment, this Court found that there was a sufficient causal connection between such claims and his employment with the employer. *Id*.

Although, in this case, the trial court speculated that the attack on Mikaels could have just as easily been lodged against a Waffle House customer, that hardly resolves the question before us. Even if Mikaels' employment does little more than explain why he was present at the Waffle House premises at the time of the attack, the record before us makes clear that the attack was perpetrated by a fellow employee

12

while Mikaels was working. Those facts, combined with the allegation that the attack was the result of Waffle House's failed workplace security efforts and its negligent hiring, training, management, and supervision of Mikaels' fellow employees establishes the "slight causal connection" between the relevant incident, Mikaels' claims, and his employment with Waffle House that *Wedemeyer* requires.

Our prior decisions regarding the scope of arbitrability created by a given arbitration agreement also instruct that we are to resolve any interpretive doubts in favor of arbitration. As our Supreme Court has indicated, with regard to the FAA, "as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including with regard to "the construction of the contract language itself." *DiMambro-Northend Assoc., v. Blanck-Alvarez, Inc.*, 251 Ga. 704, 707 (1) (309 SE2d 364) (1983) (citation omitted). Moreover, as this Court has previously discussed, there is "a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Forsee*, 265 Ga. App. at 591 (citation omitted).

13

Because we agree with Waffle House that the November 14 arbitration agreement expresses the parties' intention that the FAA govern any arbitration between them, and because we further agree with Waffle House that Mikaels' claims fall within the scope of the arbitration agreement, we hold that the trial court erred in denying Waffle House's motion to compel arbitration. We therefore reverse the order of the trial court.

*Judgment reversed. McFadden, P. J., concurs fully in Divisions 1 and 3 and specially in Division 2. Branch, J., concur*s.

A17A1281. WAFFLE HOUSE, INC. v. PAVESI.

MCFADDEN, Presiding Judge, concurring specially.

I concur in the judgment and in Divisions 1 and 3 of the majority opinion, but I do not agree with the analysis in Division 2. So our rules declare that Division 2 is not binding precedent. Court of Appeals Rule 33 (a).

The Georgia law that would otherwise apply is sidelined by preemption, not by choice of law. If we were considering choice of law, we would need to address Georgia public policy. But we have no choice.

The Georgia Arbitration Code, at "OCGA § 9-9-2 (c) (10)[,] exempts from arbitration claims for 'personal bodily injury' . . . ." *Davidson v. A.G. Edwards & Sons*, 324 Ga. App. 172, 174 n. 3 (1) (a) (748 SE2d 300) (2013). So it is preempted by the Federal Arbitration Act. "The FAA preempts any state law that conflicts with

its provisions or undermines the enforcement of private arbitration agreements." Id. at 173 (1) (a).

If the FAA were merely a statute enacted by a sister state and the question before us were the enforceability of a choice-of-law term in a contract, we would need to address Georgia public policy. "Georgia conflicts of law will not follow a contractual selection of law of a foreign state where such chosen law would contravene the public policy of Georgia . . . ." *Hulcher Svcs. v. R. J. Corman R. Co.,* 247 Ga. App. 486, 489 (2) (543 SE2d 461) (2000). See also OCGA § 1-3-9 ("The laws of other states and foreign nations shall have no force and effect of themselves within this state further than is provided by the Constitution of the United States and is recognized by the comity of states. The courts shall enforce this comity, unless restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state."); *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 428 (659 SE2d 359) (2008) ("In light of OCGA § 1-3-9, the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state.").

But as the Supreme Court of the United States has recently reminded us, when it comes to arbitration, state public policy is of no consequence. Under the Federal Arbitration Act, a state court's declaration "[i]n ringing terms [of] the jury right's unsurpassed standing in the State Constitution" is no more than a noisy gong or a clanging cymbal. *Kindred Nursing Centers Ltd. Partnership v. Clark*, __ U.S. __, __ (II) (A) (137 SCt 1421, 197 LE2d 806) (2017).