**FIFTH DIVISION
MERCIER, C. J.,
MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

November 15, 2024

# In the Court of Appeals of Georgia

A24A1647. LOWE CONSTRUCTION AND DEVELOPMENT, LLC et al. v. HUDGINS et al.

MERCIER, Chief Judge.

Lowe Construction and Development, LLC ("Lowe Construction") and Michael Lowe (collectively, "appellants") appeal from the trial court's order denying their motion to stay and compel arbitration in this case. For reasons that follow, we reverse.

"The standard of review from the denial of a motion to compel arbitration is whether the trial court was correct as a matter of law." *Waffle House v. Pavesi*, 343 Ga. App. 102, 102 (806 SE2d 204) (2017) (citation and punctuation omitted). Interpretation of an arbitration agreement is a contractual matter, which also presents questions of law subject to de novo review. See id.

With these standards in mind, we turn to the record here. In 2021, Lowe Construction, a construction company owned by Michael Lowe, purchased several lots in Walton County on which it planned to build residential homes, including adjacent parcels identified as Lots 8 and 9 in the Amber Lakes Subdivision. Lowe Construction sold Lot 9 to Jesse and Michele Hudgins in 2022. Shortly thereafter, Carrie Martin purchased Lot 8.

As part of their sales transaction, the Hudginses executed a New Construction Purchase and Sale Agreement ("the Purchase Agreement") relating to the sale of Lot 9 and construction of a new home on the property. Paragraph 12 (b) of the contract addressed the parties' agreement to arbitrate disputes, providing in pertinent part:

> b. **Arbitration:** All claims arising out of or relating to this Agreement or the alleged acts or omissions of any or all the parties hereunder shall be resolved by arbitration in accordance with the Federal Arbitration Act 9 U. S. C. § 1 *et. seq.* and the rules and procedures of the arbitration company selected to administer the arbitration. Upon making or receiving a demand for arbitration (which shall only be made with respect to a construction defects claim after following the procedures described in OCGA § 8-2-38[1] has been followed [sic]), the parties shall either: (1) engage the arbitration company, if any, identified elsewhere

---

[1] OCGA § 8-2-38 sets forth procedures for resolving construction defect claims.

herein to conduct the arbitration; or (2) if no such arbitration company has been selected, work together in good faith to select a mutually acceptable arbitration company with offices in Georgia to administer and conduct the arbitration. . . .

Martin executed the same agreement with respect to her purchase of Lot 8. At some point following that purchase, Lowe Construction built a detached garage for Martin and her husband, and it also installed a septic drain field for their use. According to the Hudginses, however, Lowe Construction wrongfully placed the Martin garage and septic field entirely within the boundaries of their property (Lot 9). Based on that placement, the Hudginses sued the appellants, Martin, her husband, and a trust to which the Martin property had been transferred,[2] alleging claims for ejectment, trespass, nuisance, negligence, breach of warranty of title, fraud, punitive damages, and attorney fees.

The appellants subsequently moved to stay the litigation and compel arbitration pursuant to Paragraph 12 (b) of the Purchase Agreement. The Hudginses objected, arguing that their claims fell outside the scope of the arbitration clause. After a

---

[2] It appears that Martin added her husband to the title of Lot 8, then both quitclaimed the property to the Martin Trust in April 2023.

3

hearing, the trial court denied the motion. We granted the appellants' request for interlocutory review, and this appeal followed.

The Federal Arbitration Act "reflects a liberal federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *SunTrust Bank v. Lilliston*, 302 Ga. 840, 842 (809 SE2d 819) (2018) (citation and punctuation omitted). Ultimately,

> there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Waffle House*, 343 Ga. App. at 109 (3) (citation and punctuation omitted).

The arbitration clause in this case extends to "[a]ll claims arising out of or relating to [the Purchase] Agreement or the alleged acts or omissions of any or all the parties hereunder[.]" Construing a similar provision, we have characterized such language as "the broadest language the parties could reasonably use to subject their disputes to [arbitration], including collateral disputes that relate to the agreement containing the clause." *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 672-73 (1) (583

SE2d 466) (2003) (citation and punctuation omitted). We have also noted that "nothing more than a slight causal connection is required to show that a claim arose out of a specified relationship set forth in a contract." *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 52 (2) (749 SE2d 241) (2013) (citation, punctuation, and emphasis omitted); see also *Lawyers Title Ins. Corp. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 30 (2) (645 SE2d 536) (2007) ("Under Georgia law, where a contract provides that a loss must arise out of a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship.") (citation and punctuation omitted).

Despite the breadth of the arbitration language, the trial court denied the motion to compel arbitration, concluding that the complaint relates to post-sale activities that did not arise out of the Purchase Agreement or involve construction of the Hudginses' home. We disagree.

At base, this dispute involves the property transferred to the Hudginses. Citing lot lines reflected in a recorded plat, the Hudginses assert that the garage and septic field built for the Martins encroach on their property (Lot 9), providing the foundation for each of their claims. The appellants, however, contest the encroachment

allegation. They contend that, pursuant to a mutual understanding between all parties, the boundaries of Lots 8 and 9 were established by boundary markers present on the lots at the time of sale.[3] According to the appellants, those marked boundaries reveal that the Martin garage and septic field lie fully within Lot 8, the Martin property. Issues regarding the property actually transferred pursuant to the Purchase Agreement, therefore, are central to resolving the Hudginses' allegations.[4]

Alternatively, the Hudginses assert that the Purchase Agreement only requires arbitration of claims relating to construction defects. In their view, because their allegations raise no construction defect claim, arbitration is not required. Again, however, we must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. See *SunTrust Bank*, 302 Ga. at 842. Paragraph 12 (b) explicitly subjects

---

[3] The appellants assert that, to the extent the marked boundaries differ from those reflected on the recorded plat, the Hudgins and Martin deeds should be equitably reformed to reflect the parties' mutual understanding of the boundary lines at the time of the sales.

[4] It appears that the trial court accepted the Hudginses' encroachment allegation as true, stating in its order that the appellants had constructed the Martin garage on the Hudgins property. In determining whether a claim is subject to arbitration, however, a trial court should not "consider whether the claim with respect to which arbitration is sought is tenable nor pass upon the merits of the dispute." *Wedemeyer*, 324 Ga. App. at 51 (2) (citation and punctuation omitted).

*all* claims arising out of or relating to the Purchase Agreement to arbitration. We recognize that the provision also discusses procedural requirements applicable to construction defect claims pursuant to OCGA § 8-2-38. But it does not limit the arbitration requirement to such claims.

A clear causal connection exists between the claims in the complaint and the Purchase Agreement, bringing those claims directly within the arbitration provision. See *Waffle House*, 343 Ga. App. at 109 (3); *Wedemeyer*, 324 Ga. App. at 52 (2). The trial court, therefore, erred in denying the appellants' motion to stay and compel arbitration. See *Waffle House*, 343 Ga. App. at 109 (3).

*Judgment reversed. McFadden, P. J., and Rickman, J., concur.*