A06A0671. RICHARD BOWERS & CO. v. CREEL.
(633 SE2d 555)

MILLER, Judge.

Pursuant to an employment contract, Richard Bowers & Co. ("Bowers"), a commercial real estate broker, employed Kevin Creel as a licensed sales agent. Creel procured certain commercial lease deals for Bowers while employed by that company, but left the company to work for CRESA Partners ("CRESA"), a competing commercial real estate broker, before such leases were renewed or expanded. Creel then obtained renewals or expansions of these commercial leases with CRESA instead of Bowers. Bowers then sued Creel under its former employment contract with him and for alleged money had and received, claiming that Creel owed Bowers commission payments for the lease renewal and expansion deals that Creel had closed with his new employer. Creel moved for summary judgment, which the trial court granted. Bowers appeals from this ruling. Since the plain terms of the employment contract at issue do not allow Bowers to receive commission payments for deals closed with Creel's

subsequent employer, and since the contract would be unlawful if it did require such commission payments from Creel, we affirm.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553-554 (562 SE2d 731) (2002).

So viewed, the evidence reveals that Bowers hired Creel as a licensed commercial real estate agent in March 1986. The employment agreement between Bowers and Creel contained the following provision in the event of Creel's departure from the company:

> *Departure Arrangements.* Should you decide to remove your license with [Bowers] at some point, the existing commission accounts would be paid to you on the basis of you receiving 50% of the commissions and [Bowers] receiving 50% of the commissions. . . . This policy would apply through the [commercial] lease term; however, should [commercial lease] renewals and expansions take place, you would be discounted a very small amount, where you would then receive 45% of the monthly commissions and [Bowers] would receive 55% of the monthly commissions.

Creel voluntarily terminated his employment with Bowers in July 2002 to work for CRESA. While employed with CRESA, Creel procured eleven lease renewals and one lease expansion of leases that he had originally procured while employed with Bowers. Bowers then sued Creel, claiming that Creel owed it 55 percent of the commissions earned from these transactions pursuant to the departure terms of his employment contract with Bowers.

1. Bowers claims that the trial court erred in concluding that Creel did not breach his employment contract by failing to pay Bowers commissions stemming from the deals that Creel closed with his new employer. We disagree.

Here, Bowers' argument turns upon the construction of the contract, which construction involves a question of law for the court to resolve based on the intent of the parties as reflected in the agreement. See *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); OCGA § 13-2-1. We review this issue de novo. *Deep Six, Inc.*, supra, 246 Ga. App. at 73 (2). First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2. "Where the language of a contract is plain and unambiguous, [however,] no construction is required or permissible and the terms of the contract

must be given an interpretation of ordinary significance." (Citation and punctuation omitted.) *Race, Inc. v. Wade Leasing, Inc.*, 201 Ga. App. 340, 341 (1) (411 SE2d 56) (1991).

The contract language at issue here is unambiguous and subject to only one reasonable interpretation. The contract requires a 50/50 split of commissions between Creel and Bowers for existing lease accounts at the time of Creel's departure from the firm, but changes the commission split to 45/55 if those existing lease accounts are renewed or expanded through Bowers after Creel's departure. Here, it is undisputed that the leases in question were not renewed or expanded through Bowers, but through Creel's new employment with CRESA. Since the lease renewals and expansion were procured through Creel's new employment, and not Bowers, Creel was not required to pay Bowers commissions in connection with these trans-actions.

To interpret the contract otherwise would be unreasonable. Indeed, a contract term requiring a licensed real estate agent to pay his former broker commissions earned with a new broker, absent a written agreement between the former and new broker, would be unlawful. Pursuant to OCGA § 43-40-19 (c),

> [a] licensee transferring to a new broker may continue to act as a licensee for the former broker with regard to transactions begun prior to the transfer, *provided*: (1) Both brokers agree in writing to the licensee's actions on behalf of the former broker; (2) The transactions on which the licensee will act on behalf of the former broker are enumerated in the written agreement between the brokers; (3) The former broker agrees in writing to assume full responsibility for the licensee's activities in the enumerated transactions; and (4) The written agreement expresses the terms under which the licensee shall be compensated by the former broker.

(Emphasis supplied.) Here, there was no written agreement between CRESA and Bowers that would have authorized Creel to work on behalf of Bowers while employed by CRESA, forcing Creel to pay Bowers commissions in connection with such work. An interpretation of the employment contract at issue that would allow Bowers to recover such commissions would therefore violate OCGA § 43-40-19 (c), and result in an unenforceable agreement. See OCGA § 13-8-1 (illegal contracts are void); *Sofran Peachtree City, LLC v. Peachtree City Holdings, LLC*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001) ("[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect.") (citation and footnote omitted).

Accordingly, Bowers' breach-of-contract claim fails.

2. In light of our holding in Division 1 denying Bowers commissions in connection with Creel's subsequent employment, Bowers' claim for money had and received also fails. See *William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262, 265 (2) (488 SE2d 760) (1997) (law firm's action against former associate for money had and received failed as a matter of law where associate had not been paid money that should have been paid to the firm).

The trial court properly granted summary judgment to Creel.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 12, 2006 —
RECONSIDERATION DENIED JUNE 29, 2006 — 

*Decker, Hallman, Barber & Briggs, Richard P. Decker*, for appellant.

*Timothy C. Batten, Sr.*, for appellee.

