**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 27, 2013**

# In the Court of Appeals of Georgia

A13A0836. WEDEMEYER v. GULFSTREAM AEROSPACE CORPORATION.

MILLER, Judge.

John Scott Wedemeyer sued Gulfstream Aerospace Corporation, his former employer, for defamation and tortious interference with a business expectancy. Gulfstream moved to dismiss, arguing, inter alia, that Wedemeyer was compelled to arbitrate his claims based on the parties' arbitration agreement that covered all employment-related claims, including claims for intentional torts and defamation. After conducting two hearings on the matter and carefully reviewing the record, the trial court granted Gulfstream's motion to compel arbitration and dismissed the case with prejudice. Wedemeyer appeals, contending that the trial court erred in compelling arbitration. For the reasons that follow, we affirm.

"Georgia courts are required to uphold valid arbitration provisions in contracts[.]" (Citation and punctuation omitted.) *Bishop Contracting Co. v. Center Bros.*, 213 Ga. App. 804, 805 (1) (445 SE2d 780) (1994). "The standard of review from the denial of a motion to compel arbitration is whether the trial court was correct as a matter of law." (Footnote omitted.) *D. S. Ameri Constr. Corp. v. Simpson*, 271 Ga. App. 825, 826 (611 SE2d 103) (2005). "Unless the parties clearly and unmistakably provide otherwise," the arbitrability is undeniably an issue for judicial determination. (Citations omitted.) *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 649 (II) (106 SCt 1415, 89 LEd 648) (1986).

The record shows that Gulfstream manufactures and services Gulfstream aircraft and is headquartered in Chatham County, Georgia. In 2007, Gulfstream hired Wedemeyer as a production test pilot. Upon his employment, Wedemeyer agreed to abide by Gulfstream's Dispute Resolution Policy (hereinafter the "Arbitration Agreement"), which set forth a four-level process culminating in binding arbitration of all employment-related claims, including claims for intentional torts and defamation.

The Arbitration Agreement pertinently provides:

PURPOSE [:] This policy ("DRP" or the "Policy") applies. . .to *all employees who were employed by the Company while the Policy or any version was in effect* (collectively referred as the "Employee" or Employees").

. . .

DRP is a structured dispute resolution process that applies to Covered Claims and consists of four levels: *Level 1*: Human Resources Review; . . . *Level 2*: Management Panel Review; . . . *Level 3*: Mediation[;] . . . *Level 4*: Arbitration[.] Employees must complete each level of the process before proceeding to the next level. The Company may elect to bypass one or more steps prior to arbitration *for disputes* with applicants for employment, *with former employees*, or if the Company is the initiating party.

. . .

Covered Claims are *employment-related* claims between an individual Employee and the Company[.] . . . Covered Claims involve a claim of a legal right, obligation or entitlement *regarding or arising from* the employment relationship. Covered Claims include, but are not limited to, the following: (1) Claims relating to involuntary terminations[;] (5) Tort claims, intentional torts, negligence, defamation, invasion of privacy, infliction or emotional distress[.]

. . .

3

Claims excluded from the DRP are the following: . . . 5. Claims against the Company . . . *which do not have any relationship to the Employee's work* or relationship to the Company[.]

. . .

*Exclusivity of the Dispute Resolution Policy*[:] The DRP is the sole and exclusive forum and remedy for all Covered Claims. The Employee and Company agree and hereby waive any right to jury trial for any Covered Claim.

. . .

*Agreement to Arbitrate in Interstate Commerce*[:] This Policy is an agreement to arbitrate pursuant to the Federal Arbitration Act [FAA], 9 U.S.C.A. Sections 1-14[.]

(Emphasis supplied.)

On February 14, 2011, Wedemeyer was piloting a crew airplane during a production test flight in Appleton, Wisconsin. Upon landing, the plane experienced several system failures. Wedemeyer and his co-pilot's response to those issues caused the plane to depart the runway, resulting in damage to the plane. Gulfstream immediately grounded Wedemeyer and subsequently terminated his employment.

4

Wedemeyer sued Gulfstream, alleging that Gulfstream's dissemination of false conclusions that he was at-fault for the incident had cost him numerous pilot positions. Wedemeyer further alleged that Gulfstream's actions after his employment tortiously interfered with a legitimate business expectancy and that he had lost income from Gulfstream's improper acts. Wedemeyer also alleged Gulfstream defamed him during a pilots' meeting that was held during the evening on the day Wedemeyer was fired. Thereafter, a number of Gulfstream pilots allegedly warned various third parties and Gulfstream counseled its employees to not have anything to do with Wedemeyer because he was suing Gulfstream.

Gulfstream moved to dismiss this action and compel arbitration. The trial court granted the motion and dismissed Wedemeyer's suit.

1. In his sole enumeration of error, Wedemeyer contends that the trial court erred by compelling arbitration because he was not subject to the Arbitration Agreement when his claims against Gulfstream arose and his claims are not covered claims under the Agreement. We disagree.

"Arbitration is a matter of consent, not coercion," *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (109 SCt 1248, 103 LEd2d 488) (1989), and a party can be compelled to arbitrate only upon

5

a showing that he entered into an enforceable agreement to arbitrate. *Life Care Centers of America, Inc. v. Smith*, 298 Ga. App. 739, 741 (1) (681 SE2d 182) (2009). Here, we think there is sufficient evidence of the existence of an enforceable agreement between Wedemeyer and Gulfstream to arbitrate.

"Arbitration in Georgia is a matter of contract. As such, the construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction." (Citations and punctuation omitted.) *SCSJ Enterprises v. Hansen & Hansen Enterprises*, 319 Ga. App. 210, 212 (1) (734 SE2d 214) (2012).

> First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2. Where the language of a contract is plain and unambiguous, however, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.

(Citation and punctuation omitted.) *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200-201 (1) (633 SE2d 555) (2006); see also *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 308-309 (3) (732 SE2d 449) (2012) (the contract alone is looked to where the language is clear and unambiguous). Moreover, "[i]n construing any contract, words carry their usual and common meaning, and the

6

construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." (Punctuation and footnote omitted.) *Mattocks v. Matus*, 266 Ga. 346, 349 (1) (466 SE2d 840) (1996); see also OCGA § 13-2-2 (4).

Contrary to Wedemeyer's contention, the Arbitration Agreement is not limited to disputes involving only applicants or current Gulfstream employees. Notably, the contract language at issue here unambiguously provides that the Arbitration Agreement applies to all employees who were employed by Gulfstream while the Arbitration Agreement or any version was in effect. There is no dispute that Wedemeyer was an employee when the contract was in effect. The contract language also provides that Gulfstream may elect to bypass one or more steps prior to arbitration for disputes with former employees. Moreover, covered claims include claims relating to involuntary discharge, i.e., claims brought by a former employee, not an applicant or current employee. Applying the tenets of contract construction as set forth above, it is clear that the Arbitration Agreement applies to disputes involving former Gulfstream employees.

2. Having decided that the Arbitration Agreement applies to former employees, we must next consider whether Wedemeyer's claims arise from his employment at Gulfstream.[1] We conclude that they do.

> [W]here parties have entered into a valid arbitration agreement, the trial court must determine whether the claims covered by the agreement are actually arbitrable before submitting them to an arbitrator. But in fulfilling this gatekeeping duty, the trial court shall not consider whether the claim with respect to which arbitration is sought is tenable nor otherwise pass upon the merits of the dispute. OCGA § 9-9-4 (d).

(Punctuation and footnote omitted.) *Dunaway v. UAP/Ga AG. Chem., Inc.*, 301 Ga. App. 282, 285 (1) (687 SE2d 211) (2009). As set forth above, the Arbitration Agreement is an agreement to arbitrate covered claims pursuant to the FAA.[2]

---

[1] We reject Wedemeyer's contention that Gulfstream is estopped from asserting that his claims for defamation, tortious interference and lost income are covered by the Arbitration Agreement. Contrary to Wedemeyer's contention, Gulfstream did not admit that these claims do not qualify as covered claims in a June 2011 letter to Wedemeyer's counsel. At that time, Wedemeyer's sole pending claim under the Arbitration Agreement was a challenge to Gulfstream's decision to terminate his employment, and the letter merely confirmed a conversation between the parties concerning that claim.

[2] Wedemeyer's contention that the FAA does not apply to employment contracts, is meritless. See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (II) (A), 119 (II) (B) (121 SCt 1302, 149 LEd2d 234) (2001) (holding that the FAA is applicable to all employment contracts except those involving workers engaged in the movement of goods in interstate commerce); see also *Weeks v. Harden Mfg. Corp.*,

The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

(Citation and punctuation omitted.) *DiMambro-Northend Assocs. v. Blanck-Alvarez, Inc.*, 251 Ga. 704, 707 (1) (309 SE2d 364) (1983); see also *BellSouth Corp. v. Forsee*, 265 Ga. App. 589, 590-591 595 SE2d 99) (2004). Moreover,

[u]nder Georgia law, where a contract provides that a [claim] must arise out of a specified [relationship], it does not mean proximate cause in the strict legal sense but instead encompasses *almost any causal connection or relationship*. Indeed, nothing more than a *slight causal connection* is required to show that a [claim] arose out of a specified [relationship] set forth in a contract.

(Citations and punctuation omitted; Emphasis supplied.) *Lawyers Title Ins. v. New Freedom Mtg. Corp.*, 285 Ga. App. 22, 30 (2) (645 SE2d 536) (2007).

---

291 F.3d 1307, 1314 (II) (11th Cir. 2002). Moreover, Gulfstream's Arbitration Agreement is an enforceable agreement to arbitrate and its "provisions are reasonably designed to resolve claims as quickly and efficiently as possible, consistent with the goals of arbitration[.]" *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1379 (II) (C) (4) (11th Cir. 2005) (interpreting the same DRP at issue in this case).

9

Here, the Arbitration Agreement unambiguously states that covered claims are claims regarding or arising from the employment relationship, including claims related to involuntary termination, defamation and intentional torts. In contrast, claims that are excluded from arbitration include claims against Gulfstream which do not have any relationship to an employee's work or relationship to Gulfstream. Wedemeyer's claims for defamation, tortious interference with a business expectancy and lost income, all arise from the incident that occurred during his employment with Gulfstream and that gave rise to his termination. Namely, his claims are based on Gulfstream's alleged actions and statements following Gulfstream's determination that he was at-fault for the February 2011 airplane incident. Accordingly, there is at least a slight causal connection between Wedemeyer's claims and his employment with Gulfstream. In granting Gulfstream's motion to compel arbitration, the trial court conducted a thorough review of the parties' arguments, properly fulfilled its gatekeeping role and properly resolved any doubts concerning the scope of arbitrable issues.[3]

---

[3] Contrary to Wedemeyer's contention, the decisions of the United States Court of Appeals for the Second Circuit in *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2nd Cir. 1983) and *Fuller v. Guthrie*, 565 F.2d 259 (2nd Cir. 1977), do not require a different result. Unlike this case, the plaintiff in *Coudert* voluntarily resigned, and the arbitration agreement in *Fuller*, did not expressly include intentional

In sum, we hold that the Arbitration Agreement clearly applies to the employment-related claims brought by Wedemeyer, and the trial court properly granted Gulfstream's motion to compel arbitration because there a causal connection between Wedermeyer's claims and his employment with Gulfstream.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

torts and defamation. Moreover, the subsequent decision in *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047,1052 (2nd Cir. 1989), questioned the decision in *Coudert* and held that certain statements made after an employee's termination were arbitrable because they were made during communications that an employer would foreseeably make upon an employee's termination. It is reasonably foreseeable here that, following the incident, Gulfstream would make statements regarding Wedemeyer's alleged fault for the incident. Proving the truth or falsity of those statements will require the presentation of evidence integrally related to Wedemeyer's employment with Gulfstream, therefore arbitration is required. See *Fleck*, supra, 891 F.2d at 1053.