**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 2, 2021**

# In the Court of Appeals of Georgia

A21A0173. EMORY HEALTHCARE, INC. et al. v. FARRELL.

DILLARD, Presiding Judge.

Georgia has a robust policy of favoring the resolution of legal disputes through arbitration. But arbitration agreements are still contracts, and the presumption of arbitrability—strong as it is—cannot displace the traditional rules of contract formation. And here, we are asked to consider the contractual effect of a hospital's practice of re-presenting patients with admission forms that include an ostensibly indefinite arbitration agreement on any previously signed arbitration agreements by those patients. So, here is how it works. A patient seeks admittance to a hospital for healthcare services and is presented with paperwork to sign as a condition of being admitted. These admissions forms include an arbitration agreement governing this visit and all future admittances. If the patient signs the arbitration agreement during

each hospital stay, then there is no issue as to the *formation* of those agreements. But what if—as in this case—a patient signs an indefinite arbitration agreement during one visit, later seeks admission for additional or other healthcare services, is re-presented with the same arbitration agreement, refuses to sign it, and is still admitted to the hospital? Can the hospital rely upon the prior arbitration agreement to force the patient to arbitrate any claims arising out of the subsequent hospital stay? The short answer is: No. By re-presenting an indefinite arbitration agreement to a patient who has already executed one, the hospital has contractually abandoned the prior agreement.

This brings us to Richard Farrell's lawsuit against the Emory Defendants,[1] in which he alleges that he suffered injuries as a result of the defendants' professional negligence in performing a surgical procedure. The Emory Defendants filed a motion to compel arbitration based on an agreement contained in admissions paperwork signed by Farrell several months earlier, when he sought treatment unrelated to that at issue in his lawsuit. The trial court denied the Emory Defendants' motion, and they

---

[1] Farrell sued Robert M. Ermentrout, M.D., Irwin M. Best, M.D., Younis Alazzawi, M.D., Emory University, Emory University Hospital, and Emory Healthcare, Inc., but we refer to these parties as the "Emory Defendants" for the sake of simplicity.

2

now appeal. In doing so, they argue the trial court erred in ruling that their practice of re-presenting an arbitration agreement to a previously admitted patient constitutes an abandonment of any prior arbitration agreement signed by that patient. For the reasons set forth *infra*, we affirm.

This Court reviews the grant or denial of a motion to compel arbitration *de novo* to see if the trial court's decision is correct as a matter of law;[2] but we defer to the trial court's factual findings unless they are clearly erroneous.[3] So viewed, the record shows that in March and April of 2018, Farrell sought treatment with Emory for medical issues on several occasions. Each time, Emory presented Farrell with an identical Admission/Registration Agreement, which outlined the terms of his

---

[2] *See Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d 531) (2019) ("[T]his Court reviews the record de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law." (punctuation omitted)); *Kindred Nursing Ctrs. Ltd. P'ship v. Chrzanowski*, 338 Ga. App. 708, 708-09 (791 SE2d 601) (2016) (same).

[3] *See Schinazi*, 351 Ga. App. at 156 ("[W]e defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous."); *Ed Voyles Jeep-Chrysler, Inc. v. Wahls*, 294 Ga. App. 876, 877 (670 SE2d 540) (2008) (explaining that, in context of determining whether a party has waived its right to arbitrate, "the findings upon which the conclusion is based are predicate questions of fact, which may not be overturned unless clearly erroneous" (punctuation omitted)).

admission. Paragraph VI of this agreement is titled "Agreement to Alternative Dispute Resolution," and provides as follows:

> I agree that any claim or dispute arising out of or related to the provision of health care services to me by Emory University, Inc. d/b/a [numerous Emory-related entities], or their employees or agents ("Emory"), except as otherwise provided herein, shall be resolved by final and binding arbitration. I agree that this provision is governed by the terms of the Federal Arbitration Act. I understand and agree that this agreement includes and encompasses any claims arising out of or relating to health care services which shall be provided to me upon this admission as well as all health care services provided to me by Emory in the future, provided, however, that this agreement does not include and encompass any claim or dispute by either party arising out of or related to the billing or payment for health care services. I understand and agree that by agreeing to arbitrate, I am waiving my right to a jury trial (if otherwise available). I understand that this agreement is also binding on any individual or entity claiming by or through me or on my behalf. I understand that this agreement is voluntary and is not a precondition to receiving health care services. . . . I understand that I have the right to revoke this agreement no later than ten (10) days following signature and that, if I choose to revoke, I must request and execute a revocation form within this time period.

Immediately below this paragraph is a date and signature line for the patient to indicate whether he or she consents to arbitration. And importantly, on the March and

4

April admissions forms, Farrell did not sign underneath Paragraph VI. But on May 21, 2018, Farrell again sought treatment with Emory, and on this occasion, he did sign the line underneath Paragraph VI, indicating his consent to arbitration.

Farrell later sought treatment with Emory again on June 4 and August 6, 2018, but he did not sign his specific consent to Paragraph VI on either of those two admissions forms. And then, on August 18, 2018, while still admitted and receiving treatment under the August 6 admission form, Farrell underwent a Transjugular Intrahepatic Portosystemic Shunt ("TIPS") procedure,[4] during which he claims the Emory Defendants' professional negligence resulted in an injury to one of his major blood vessels.

Less than one year later, Farrell filed a medical malpractice lawsuit against the Emory Defendants based on the foregoing incident, and the defendants filed separate answers. At the same time, the Emory Defendants filed motions to dismiss Farrell's complaint, or, alternatively, to compel arbitration. In doing so, they argued that

---

[4] A Transjugular Intrahepatic Portosystemic Shunt is a procedure to create new connections between two blood vessels in a patient's liver and, thus, assist in treating severe liver problems. It is not a surgical procedure, but rather, is done by an interventional radiologist. Using x-ray guidance, the radiologist inserts a catheter into the patient's jugular vein and then guides the catheter to a vein in the liver where the stent is placed to connect a portal vein to a hepatic vein, thereby easing blood flow. *See* https://medlineplus.gov/ency/article/007210.htm (last visited on May 29, 2021).

Farrell's May 21, 2018 admissions forms—which included his signature consenting to the arbitration agreement in Paragraph VI—required him to submit the malpractice claims arising out of his August 6, 2018 admission to arbitration. Farrell responded, and the trial court held a hearing before taking the matter under advisement. Subsequently, the court issued an order denying the Emory Defendants' motion to compel arbitration but also granted them a certificate of immediate review. We granted the Emory Defendants' application for interlocutory review, and this appeal follows.

The Emory Defendants contend that the trial court erred in denying their motions to compel arbitration. Specifically, they argue that the court erroneously concluded that presenting an arbitration agreement with admissions forms every time a patient is admitted constitutes an abandonment of any existing arbitration agreement signed in previous admissions forms. We disagree.

It is well established that, under both Georgia and federal law, arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[5] Importantly, as the parties seeking arbitration,

[5] *Yates v. CACV of Col. LLC*, 303 Ga. App. 425, 430 (1) (693 SE2d 629) (2010) (punctuation omitted); *accord Pickle v. Rayonier Forest Res., L.P.*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006); *see Volt Info. Sci. v. Bd. of Trustees of Leland*

6

the Emory Defendants bear "the burden of proving the existence of a valid and enforceable agreement to arbitrate, which is generally governed by state law principles of contract formation."[6] So, we must first determine if "the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2."[7] And while ambiguities in the language of an agreement "should be resolved in favor of arbitration[,] we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply

---

*Stanford Junior Univ.*, 489 U.S. 468, 479 (109 SCt 1248, 103 LE2d 488) (1989) (noting that "[a]rbitration is a matter of consent, not coercion[.]" (punctuation omitted)).

[6] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Landau-Taylor as Trustee of Ga. Sortor Lerangis Trust*, 357 Ga. App. 818, 821 (1) (849 SE2d 504) (2020) (punctuation omitted); *accord United Health Svcs. of Ga., Inc. v. Alexander*, 342 Ga. App. 1, 2 (2) (802 SE2d 314) (2017); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (II) (115 SCt 1920, 131 LE2d 985) (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts." (punctuation omitted)); *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 50 (1) (749 SE2d 241) (2013) ("Arbitration in Georgia is a matter of contract. As such, the construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction." (punctuation omitted)).

[7] *Wedemeyer*, 324 Ga. App. at 50 (1) (punctuation omitted); *accord Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200 (1) (633 SE2d 555) (2006).

because the policy favoring arbitration is implicated."[8] In contrast, when the language of a contract is "plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance."[9] Furthermore, the question of arbitrability—*i.e.*, whether an agreement creates a duty for the parties to arbitrate the particular grievance—is "undeniably an issue for judicial determination."[10]

In this matter, we are not called upon to mine the vagaries of "ambiguities in the language of the agreement."[11] Rather, the issue is whether Farrell consented to arbitrate his medical malpractice claims.[12] And as previously noted, the Emory Defendants contend that Farrell's signed consent to the arbitration agreement in his May 21, 2018 admissions forms applied to all future admissions for treatment with

---

[8] *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (IV) (122 SCt 754, 151 LE2d 755) (2002) (punctuation omitted).

[9] *Wedemeyer*, 324 Ga. App. at 50 (1) (punctuation omitted); *accord Creel*, 280 Ga. App. at 200 (1).

[10] *Yates*, 303 Ga. App. at 430 (1) (punctuation omitted); *accord Pickle*, 282 Ga. App. at 296.

[11] *Waffle House*, 534 U.S. at 294 (IV).

[12] *See GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (II) (A) (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent.").

Emory. They maintain that the subsequent presentation to Farrell of identical admissions forms—in which he did *not* sign the arbitration agreement for the admission during which he suffered his injury—is of no consequence. More simply put, the Emory Defendants argue that re-presenting the identical admissions forms had no effect on the previously signed arbitration agreement. We disagree. By re-presenting the arbitration agreement to Ferrell each time he sought treatment, the Emory Defendants engaged in behavior unmistakably demonstrating their abandonment of the prior agreement.[13]

Under Georgia law, parties may "by mutual consent abandon an existing contract between them so as to make it not thereafter binding and the contract may

---

[13] *See Bramer*, 932 F3d at 486-89 (II) (B) (holding that nursing home operator's conduct in presenting, each time resident was readmitted to nursing home, the same arbitration agreement that had been executed for resident's initial admission, despite fact that each arbitration agreement contained a clause stating that the agreement would remain in effect after discharge and readmission, coupled with resident's refusal to sign arbitration agreement for second readmission, unmistakably showed that no prior agreement controlled when resident was readmitted for a second time). Importantly, our Supreme Court has held that we may look to federal case law for guidance in arbitration cases such as this one. *See Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 412 (1) (696 SE2d 663) (2010) (noting that "[b]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes" (punctuation omitted)).

be rescinded by conduct as well as by words."[14] Indeed, for purposes of rescission, a meeting of the minds may be shown by "the conduct of one party inconsistent with the continued existence of a contract, or abandonment or repudiation of the contract, and knowledge of, and acquiescence to, such abandonment or repudiation by the other."[15] And here, the Emory Defendants' conduct in re-presenting an identical arbitration agreement in the August 6, 2018 admissions forms is behavior fundamentally inconsistent with the continued viability of the earlier identical arbitration agreement, which Farrell signed in the May 21, 2018 admissions forms.[16] Indeed, each new presentation of the arbitration agreement by the Emory Defendants

---

[14] *WorksiteRX, LLC v. DrTango, Inc.*, 286 Ga. App. 284, 285 (648 SE2d 775) (2007) (punctuation omitted); *accord C. Brown Trucking Co., Inc. v. Henderson*, 305 Ga. App. 873, 874 (1) (700 SE2d 882) (2010); *see Wise v. Tidal Constr. Co., Inc.*, 261 Ga. App. 670, 675 (2) (583 SE2d 486) (2003) ("An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." (punctuation omitted).

[15] *Estate of Bramer*, 932 F3d at 487 (II) (B) (punctuation omitted).

[16] *See id.* (finding that nursing home operator presenting resident with an identical agreement in the admissions packet is an act fundamentally inconsistent with the continued existence of an earlier identical agreement).

10

to Farrell "constituted a new offer that is inconsistent with a contract being in force."[17]

Even so, the Emory Defendants hinge their argument on language in the arbitration agreement indicating that it applies to all future healthcare services. Specifically, they maintain that re-presenting the identical agreement—which Farrell did not sign—in later admissions forms did not amount to an abandonment[18] of the earlier signed agreement but is merely a way to "ensure the broadest possible dissemination of the offer to arbitrate among the patient population." This contention

---

[17] *Id*. *Cf. Powell v. Norman Elec. Galaxy, Inc.*, 229 Ga. App. 99, 101 (1) (493 SE2d 205) (1997) ("An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject matter embraced by the original contract." (punctuation omitted)).

[18] The Emory Defendants also attempt to bolster their argument that the agreement has not been abandoned by noting that in cases in which we have held that waiver of an arbitration right occurred, the party seeking to rely on an arbitration clause did not promptly invoke or seek to enforce the clause, and contrasting those cases to their conduct here, in which they did promptly seek to arbitrate. *See, e.g.*, *Wise*, 261 Ga. App. at 675 (2) (the party seeking to enforce the arbitration agreement "sought to have both litigation short of trial and arbitration to avoid a jury trial, which is grossly inconsistent with the inherent purpose for arbitration."). But these cases are inapposite because our holding does not rest on the Emory Defendants being dilatory in seeking to arbitrate. Rather, our decision is based on these defendants re-presenting Farrell with a new arbitration agreement, which he did not sign, and which resulted in the previous agreement being abandoned.

is a nonstarter. Indeed, despite the Emory Defendants' post hoc rationale to seemingly veil a heads-we-win-tails-you-lose outcome, we agree with the trial court that the re-presentment of the arbitration agreement unequivocally and objectively evinces an intent to offer the readmitted patient with a new opportunity to choose or reject arbitration. Otherwise, re-presentment of the identical agreement offers the patient a choice they are not contractually allowed to make, or a choice that is meaningless. This, of course, would run afoul of Georgia law, which "requires us to give meaning to every term of a contract rather than construe any term as meaningless, and to construe a contract so as to uphold the contract in whole and in every part[.]"[19] And that is exactly what we will do here.

---

[19] *City of Albany v. Dougherty Cty.*, 352 Ga. App. 664, 668 (2) (835 SE2d 681) (2019) (punctuation omitted); *see Dohn v. Dohn*, 276 Ga. 826, 828 (584 SE2d 250) (2003) ("In applying the rules of construction of contracts, we look to that construction which will uphold the contract as a whole and not make any provision meaningless." (punctuation omitted)); *Milliken & Co. v. Ga. Power Co.*, 354 Ga. App. 98, 100 (839 SE2d 306) (2020) ("It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms." (punctuation omitted)).

So, although the arbitration agreement language in the May 21, 2018 admissions forms did not require it to do so,[20] Emory presented Farrell with a new (albeit identical) arbitration agreement in the August 6, 2018 admissions forms and, therefore, abandoned the previous one. And by electing not to sign the new arbitration agreement, Farrell acquiesced in the Emory Defendants' abandonment of the earlier agreement.[21] As a result, there was no agreement to arbitrate in existence as of August 6, 2018, and the trial court did not err in denying the Emory Defendants' motion to compel arbitration.

For all these reasons, we affirm the trial court's judgment.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*

---

[20] Farrell does not argue that indefinite or infinite arbitration agreements like the one before us are unconscionable, so nothing in this opinion should be understood as either upholding or rejecting the legality of such agreements or clauses.

[21] *See supra* note 13; *see also Powell*, 229 Ga. App. at 101 (1) ("An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject matter embraced by the original contract." (punctuation omitted))